### 74697. CANTRELL v. RED WING ROLLERWAY, INC.
(361 SE2d 720)

BIRDSONG, Chief Judge.

Appellant James Cantrell, plaintiff below, brings this appeal from a jury verdict for defendant, Red Wing Rollerway, Inc. Cantrell lives on land immediately to the rear of Red Wing's skating rink in Augusta, Richmond County, Georgia. On March 6, 1985, Randy London, the manager of Red Wing, was cleaning up the rink, inside and outside. He was being assisted by an employee, Donnell Smith, and a friend of Smith's named Chris. Smith was mowing the grass outside the building. Chris was painting stripes in the parking lot. London left to buy more paint and to have lunch. When he returned, a fire was in progress behind the skating rink.

Cantrell, who lives behind the rink, was alerted to the fire by his sister-in-law, and when he first saw the fire, it was about half-way between the rink and his property. Although the fire department responded promptly, it was unable to keep the fire from destroying an open storage shed behind Cantrell's house and its contents. It was a dry and very windy day, and the strength of the wind spread the fire faster than the firemen could control it. An assistant fire chief, who was identified only as "Chief Newman," arrived shortly after the second alarm was sounded. He took charge of the additional fire units and the department personnel and after the fire was extinguished, investigated the cause. His testimony is replete with hearsay (see *Cawthon Motor Co. v. Scheufler*, 153 Ga. App. 282, 285-286 (265 SE2d 96)), as he was permitted to state, without objection, what everyone

told him they had seen prior to the discovery of the fire. (While we set forth herein hearsay utterances that were heard by and possibly considered by the jury in reaching its verdict, we have wholly disregarded all hearsay in reaching our decision.) The Chief talked to Cantrell who told him "he had been burning earlier but the fire [was] not going to come out of [his] pit and go [against] the direction of the wind." The operators of "Savin-Haven," a package shop, and Champion Oil "said . . . there was a clean-up crew outside cutting grass and cleaning up the premises at the skating rink. They saw the crew out there, but they did not see anyone start the fire." The chief was permitted to testify that he spoke to "Mr. Sterns and his wife, who lived in this trailer that's right behind the Savin-Haven" and "[t]hey told [him] they saw the clean-up crew out there. They also told me they saw several young kids back and forth from the skating rink over to the Savin-Haven and back. They did not see anyone start the fire."

There was a path beside the skating rink and it was his opinion the fire "would have started over to your left of that path somewhere." The Chief spoke to the skating rink's clean-up crew and was told that they were cleaning up, cutting grass and sweeping up the parking lot, and they did not know how the fire started. Although the Chief made a thorough investigation of the case of the fire, he could not say what started the fire. In his opinion, it was "dry enough that somebody just casually throwing a match over into some of this grass or throwing a lighted cigarette over into that grass, could have possibly started a grass fire of this nature." The manager of the skating rink denied that he had employed several young boys to come out there to cut the grass and help them out.

Cantrell filed this action for damages for the value of the materials stored in his shed. The jury found for the defendant, and appellant moved for a new trial. An amendment to the motion for new trial was filed in which it was alleged that newly discovered evidence had been found which would show that an eyewitness would testify that he saw "several boys operating a lawnmower and starting a fire in a large pile of grass" while he was walking on a path next to the skating rink and when he came out of the drug store thereafter he saw the smoke from the fire and heard the approach of the fire engine.

The trial court denied the motion for new trial, and appellant brings this appeal. *Held*:

1. Appellant contends the trial court erred in refusing his motion for new trial on the basis of newly discovered evidence. Grants of new trial on the ground of newly discovered evidence are not favored (*Reed Oil Co. v. Harrison*, 26 Ga. App. 37 (105 SE 496)) and are addressed to the sound discretion of the trial court. *Matthews v. Grace*, 199 Ga. 400, 405 (34 SE2d 454). The trial court's decision will not be disturbed absent manifest abuse of discretion. *Baumbach v. Dickens*,

213 Ga. 745, 746 (101 SE2d 702). The six bases for the grant of a new trial on newly discovered evidence are well known: (1) that the evidence has come to the knowledge of the moving party since the trial, (2) that it was not owing to the want of due diligence that the moving party did not acquire such evidence sooner, (3) that the evidence is so material that it would probably produce a different verdict, (4) that it is not cumulative only, (5) that the affidavit of the witness himself should be produced or its absence accounted for, and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness. *Hegedus v. Hegedus*, 255 Ga. 44, 46 (335 SE2d 284).

In the instant action, a deposition was taken of appellant on February 21, 1986, and trial was held on June 2, 1986, and he was questioned as to whether he had any witnesses who could testify as to the origin of the fire and answered: "I've got another witness, I haven't talked to him yet, I don't know his name. He came to me today . . . the information came in from his daddy . . . Paul something. . . . He's going to let me talk to his son. . . . This lady, I asked her to talk to the daddy and find out about it . . . the boy knows something about the colored boys that was up there working. . . . Ms. Davis, Lillian Davis . . . She told me that the boy was Paul's son. . . . Q. . . . where does Paul live? A. Prince Drive or Prince Road." The newly discovered witness, Theotis Welmaker, lives at 3525 Prince Road, Augusta, Georgia.

The trial court held that appellant did not show that the allegedly newly discovered evidence "could not have been discovered at the time of trial by the exercise of due diligence" and that such evidence was cumulative to the basic contentions which he asserted during the trial.

We cannot hold as a matter of law that the trial judge's finding as to lack of diligence is without evidentiary support. It is not clearly erroneous. We find no abuse of discretion in the court's refusal to grant a new trial on the basis of newly discovered evidence. *Mixon v. Trinity Svcs.*, 176 Ga. App. 679 (3) (337 SE2d 362).

2. Appellant enumerates error in the court charging defendant's eighth, ninth and tenth requested charges. Those requested charges are not in the record, and we note in appellant's notice of appeal that he specifically directed the clerk to omit: "Defendant's Request to Charge filed June 2, 1986." " 'The burden is on him who asserts error to show it affirmatively by the record.' " *Hancock v. Oates*, 244 Ga. 175, 176 (259 SE2d 437). The brief cannot be used in lieu of the record for adding evidence to support a claim of error. *Lowery v. Horn*, 147 Ga. App. 880 (251 SE2d 840). Without the requested charges, we have no basis to evaluate a claim of error. Nothing is presented for review.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED OCTOBER 14, 1987.

*William R. McCracken*, for appellant.
*Patrick J. Rice*, for appellee.