A03A0381. HOPPER et al. v. M & B BUILDERS, INC.
(583 SE2d 533)

JOHNSON, Presiding Judge.

Cecil and Delores Hopper appeal from the judgment entered on a jury's verdict in favor of M & B Builders, Inc. in this suit arising from a home construction agreement. We affirm the trial court's judgment.

Viewed in a light most favorable to the verdict, the evidence shows that in 1997 the Hoppers and M & B Builders negotiated for the construction of a home. The parties signed a contract in December 1997 for $305,000, which provided that M & B would obtain the lot and financing, and then sell the property to the Hoppers after construction was completed.

During the course of construction, the Hoppers requested certain changes and upgrades to the house. For example, they requested additional windows, more expensive lumber, and a larger garage. Although the upgrades were not in the agreement, M & B complied with the Hoppers' requests at a cost of an additional $4,211. The Hoppers later refused to pay these costs.

The biggest additional construction cost came as a result of Cecil Hopper's request to change the home's location on the lot. When Cecil Hopper visited the site, he saw stakes which Barry Graybeal, a foreman for M & B, had placed designating where the foundation was to be poured; Graybeal had marked the foundation to be set back about 53 feet from the front curb. Cecil Hopper approached the construction workers and directed them to move the location of the house back 22 feet from its designated location. M & B did not know about or authorize this change, but the workers made the modification. Because of the sharp slope of the lot, the location change required truckloads of additional fill dirt, extra tractor work, extra concrete, a retaining wall, and land from an adjacent lot. In all, moving the foundation's location increased the cost of the home by $38,225.

After Graybeal learned of the location change, he notified the Hoppers by certified mail of the resulting increase in construction costs. The Hoppers refused to pay anything for the increased costs caused by the location change or any of the other increased costs.

The parties stopped communicating with each other directly, and began using their attorneys as the only means of communication. During this period of strained communications, the Hoppers did not make certain decisions and selections regarding the construction of the house, and construction was further delayed.

Based on the Hoppers' refusal to cooperate in the construction of the house, the resulting delays, and their refusal to pay for upgrades and changes to the plan, M & B decided to mitigate its damages by selling the house on the open market. During the year in which the house stayed on the market, interest on the construction loan continued to accrue. The house eventually sold for $308,300. M & B had paid $328,460 for materials and labor, plus $39,500 for the lot, interest amounting to $18,534 on the construction loan, and a real estate commission of $15,215.

M & B sued the Hoppers for $82,000 in losses it claimed to have incurred as a result of the Hoppers' breach of contract. The Hoppers countersued for a return of the $5,000 they paid M & B as start-up costs. After a trial, the jury returned a verdict in favor of M & B in the amount of $64,963. The Hoppers appeal from the judgment entered on the verdict.

1. The Hoppers contend that the trial court erred in denying their motion for a new trial when Graybeal allegedly committed perjury at trial and in his deposition. According to the Hoppers, Graybeal falsely testified that the subdivision's developer had granted him a variance to place the house less than the required 50 feet from the front property line, when evidence obtained after trial indicated he had not obtained a variance, and that Graybeal lied when he testified that he had set the house back 50 or 48 feet from the curb, since other evidence at trial indicated that it was less than that distance from the curb.

After the trial, the Hoppers obtained an affidavit from Robert Cooper, who was one of the developer's officers, indicating that the subdivision's covenants require a house to be set back at least 50 feet from the front property line, and that the architectural control committee had not granted a variance or waiver on the setback of the house. The Hoppers argue that had M & B disclosed the information obtained from Cooper before trial, the outcome of the trial would have been different. This enumeration presents no basis for reversal.

(a) Relying on a criminal case, the Hoppers assert that perjured testimony is grounds for a new trial, and Graybeal gave perjured testimony. The Hoppers did not make this particular argument before the trial court in their motion for a new trial. Enumerations of error which raise questions for the first time on appeal present nothing for review.[1] In any event, we note that the Hoppers have pointed to no authority stating that the principle they rely upon applies in civil cases. Nor have they established either that Graybeal was convicted

---

[1] See *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 748 (3) (542 SE2d 151) (2000).

of perjury or, without any doubt of any kind, that every material part of his testimony was "purest fabrication."[2] This argument presents no grounds for reversal.

. (b) The Hoppers also argue that a new trial is required by OCGA § 5-5-23. That Code section provides that a new trial may be granted where material evidence, not merely cumulative or impeaching in its character but relating to new and material facts, is discovered by the applicant after the rendition of the verdict against him and is brought to the court's attention within the time allowed for entertaining a motion for a new trial. The Hoppers argue that Cooper's testimony was newly discovered in that it was hidden from them through the misleading and perjured deposition and trial testimony of Graybeal.

Grants of new trial on the ground of newly discovered evidence are not favored and are addressed to the sound discretion of the trial court.[3] The trial court's decision will not be disturbed absent a manifest abuse of discretion.[4] To obtain a new trial based on newly discovered evidence, the evidence supporting the motion must satisfy six criteria: (1) it must have been discovered after the trial or hearing; (2) its late discovery was not due to lack of diligence; (3) it is so material that its introduction in evidence would probably produce a different result; (4) it is not merely cumulative; (5) the affidavit of the witness must be attached to the motion (or its absence accounted for); and (6) it does not operate only to impeach a witness. All six criteria must be satisfied for a new trial to be warranted.[5]

The Hoppers have not satisfied all six requirements. For instance, they have not shown that the late discovery of the evidence was not due to a lack of diligence. Nearly two years before trial, in its response to the Hoppers' discovery requests, M & B disclosed the names of all persons having knowledge of any facts pertaining to the circumstances related to the case. Cooper's name was on the list, and he was identified there as the developer of the subdivision. In fact, the Hoppers included Cooper's name in the pretrial order, listing him as one of their own potential witnesses. The Hoppers could have contacted Cooper during the two-year period before trial and asked him about the variance issue they now raise.

Moreover, the Hoppers have not shown that this newly discovered evidence is so material that it would probably produce a different verdict. The jury awarded damages to M & B based in part on the increased costs resulting from the 22-foot change in location ordered

---

[2] See *Askew v. State*, 254 Ga. App. 137, 141 (5) (564 SE2d 720) (2002).

[3] *Cantrell v. Red Wing Rollerway*, 184 Ga. App. 506, 507 (1) (361 SE2d 720) (1987).

[4] Id.

[5] *Kodadek v. Lieberman*, 247 Ga. App. 606, 611 (4) (545 SE2d 25) (2001).

by Cecil Hopper. The Hoppers have not shown that evidence regarding whether Graybeal obtained a variance is so material as to justify the grant of a new trial in this case.

When a trial judge decides not to grant a new trial, he becomes the trier of fact, and his discretion in refusing the motion will not be disturbed unless manifestly abused.[6] The trial court did not abuse its discretion in denying the motion for new trial based on the allegedly perjured testimony of Graybeal.

2. The Hoppers contend that the trial court erred in charging the jury on the law of mutual departure inasmuch as there was no evidence that the parties mutually departed from the contract's terms. According to the Hoppers, they attempted to stay within the terms of the contract, though M & B did not. Furthermore, they urge, M & B cannot claim mutual departure and, at the same time, seek damages based on breach of contract.

The trial court charged the jury that if it found that the parties mutually departed from the terms of the contract, before either party could recover for failure to pursue the letter of the agreement, reasonable notice had to be given of the intention to rely on the exact terms of the contract.

In this case, the Hoppers requested certain extras and upgrades which were not in the contract or building plans. For example, they requested additional windows, a greater quality of lumber, and an increase in the size of the garage. Since M & B agreed to make the changes, though at a cost to the Hoppers, there was evidence that both parties departed from the terms of the contract. When the parties were no longer speaking directly to each other, M & B's attorney sent a letter to the Hoppers advising them that M & B would make no more upgrades at its own expense, and that any modifications to the contract would have to be written, signed by both parties, and paid by the Hoppers.

The question of whether there was a mutual departure is generally one of fact for the jury.[7] The charge, which is codified in OCGA § 13-4-4, was appropriate in light of the evidence presented. We note that mutual departure from one term of the contract does not affect the enforceability of other contract terms.[8] This enumeration is without merit.

3. According to the Hoppers, the trial court erred in its jury charge on the measure of damages. They argue that the proper mea-

---

[6] Id. at 612 (4).

[7] *Ga. Farm &c. Ins. Co. v. Bishop*, 219 Ga. App. 42, 44 (1) (464 SE2d 9) (1995) (physical precedent only).

[8] *Southwest Plaster &c. Co. v. R. S. Armstrong & Bros. Co.*, 166 Ga. App. 373, 374 (304 SE2d 500) (1983).

sure of damages should have been simply the difference between the contract price and the market price on the date of the alleged breach, and that the court therefore erred in including in its charge language which would allow the recovery of expenses flowing from any alleged breach.

The trial court instructed the jury that "damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from the breach."[9] The court also charged the jury that if it found that the defendants breached the contract by refusing to buy the house, "the proper measure of damages would be the difference between the contract price, including any additions, modifications or deletions to the contract price agreed to by the parties, and the market price of the property at the time of the breach." It further instructed the jury that any necessary expenses which contracting parties incur in complying with the contract may be recovered as damages.

The law allows the recovery of "[a]ny necessary expense" incurred in complying with the contract.[10] M & B introduced evidence of additional expenses it necessarily incurred in complying with its contractual obligation to build the house. Therefore, the Hoppers' argument that the only measure of damages was the difference between the contract price and the market value of the property is without merit. The trial court did not err in its jury charge as to the measure of damages.

4. The Hoppers urge that the trial court erred in failing to give the jury a charge on time being of the essence, when the contract provided for such and the house was not completed in a timely manner. Although the contract did include a "time is of the essence" provision, the space on the contract regarding when the house was to be completed was left blank. Because the parties failed to specify a completion date in the contract, the trial court refused to give a charge on time being of the essence. In light of the contract's silence on the issue of time, as well as evidence that the Hoppers' actions contributed to delays in the house being completed, the trial court did not err in failing to give a charge on time being of the essence.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED JUNE 17, 2003.

---

[9] See OCGA § 13-6-2.
[10] OCGA § 13-6-9.

*Kathryn J. Jaconetti*, for appellants.
*G. E. Adams*, for appellee.