In the Supreme Court of Georgia

Decided:   October 20, 2014

S14A1194. CARR-MACARTHUR v. CARR.

HINES, Justice.

Annie Carr-MacArthur ("Mother") appeals from the superior court's grant of a change in child custody and child support in regard to her minor child.  For the reasons that follow, we affirm in part, reverse in part, and remand the case to the trial court for further proceedings.

Mother and Christopher Carr ("Father") were married in 2004; the only child of the marriage was born in 2005.  The couple were divorced on June 2, 2009, and the incorporated settlement agreement gave the parties joint legal custody of the child, with primary physical custody to Mother, who had just moved to Florida; Father, who is in the Air Force, remained in Georgia, where he is currently based.  At the time of the divorce, Mother had certain physical and mental health issues, of which Father was aware, and that he believed to be manageable.

On February 6, 2010, Mother surrendered physical custody of the child to Father after the Florida Department of Family and Child Services determined

that her home was unsafe, due to conditions such as moldy food, trash on the floor with barely room to walk, empty prescription bottles found throughout the home, and cat food on the floor and kitchen table. In February 2010, in the juvenile court in Georgia, Father filed a petition for deprivation after Mother requested the child be returned to her; in October 2010, Father filed a petition for modification of custody, child support, and alimony. In a final order entered September 13, 2013, the trial court modified custody, named Father the primary physical custodian, and made associated changes in child support.

1. Mother contends that the evidence did not support the trial court's finding that a change in material conditions had occurred that adversely affected the child, as required by OCGA § 19-9-3.[1]

---

[1] In relevant part, OCGA § 19-9-3 reads:

(a)(1) In all cases in which the custody of any child is at issue between the parents, there shall be no prima-facie right to the custody of the child in the father or mother. There shall be no presumption in favor of any particular form of custody, legal or physical, nor in favor of either parent. Joint custody may be considered as an alternative form of custody by the judge and the judge at any temporary or permanent hearing may grant sole custody, joint custody, joint legal custody, or joint physical custody as appropriate.

(2) The judge hearing the issue of custody shall make a determination of custody of a child and such matter shall not be decided by a jury. The judge may take into consideration all the circumstances of the case, including the improvement of the health of the party seeking a change in custody provisions, in determining to whom custody of the child should be awarded. The duty of the judge in all such cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly.

"A trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child's best interest." *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012). See OCGA § 19–9–3 (a) (2). A trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion. *Haskell v. Haskell*, 286 Ga. 112 (1) (686 SE2d 102) (2009). Where there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion. Id.

*Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013).

Mother specifically contends that Father knew of her various psychological and physical conditions in 2009 when he agreed for her to act as primary physical custodian of their child, that these conditions were the same in 2009 as they were at the time of the trial court's 2013 change of custody order, and thus there was no "change in any material conditions and

---

. . .

(b) In any case in which a judgment awarding the custody of a child has been entered, on the motion of any party or on the motion of the judge, that portion of the judgment effecting visitation rights between the parties and their child or parenting time may be subject to review and modification or alteration without the necessity of any showing of a change in any material conditions and circumstances of either party or the child, provided that the review and modification or alteration shall not be had more often than once in each two-year period following the date of entry of the judgment. However, this subsection shall not limit or restrict the power of the judge to enter a judgment relating to the custody of a child in any new proceeding based upon a showing of a change in any material conditions or circumstances of a party or the child. A military parent's absences caused by the performance of his or her deployments, or the potential for future deployments, shall not be the sole factor considered in supporting a claim of any change in material conditions or circumstances of either party or the child; provided, however, that the court may consider evidence of the effect of a deployment in assessing a claim of any change in material conditions or circumstances of either party or the child.

circumstances of either party or the child" as set forth in OCGA § 19-9-3 (b).

Certainly, there was evidence that, before the divorce, Mother had dealt with an obsessive compulsive disorder, depression, and pain associated with rheumatoid arthritis. However, there was also evidence that she was dealing with post-traumatic stress disorder and adjustment disorder, conditions which were not known to Father at the time of the divorce. Moreover, there was also evidence that psychological and physical conditions that were present and manageable at the time of the divorce subsequently became unmanageable, even if at the time of the court's order they might again be considered manageable.

Further, it is undisputed that Mother voluntarily surrendered the child to Father in February 2010; the trial court noted that, at that time, she was caring for only one child, while at the time of the order, there were at least two other children in her home.[2] "Our courts have held that the voluntary surrender of physical custody over a child by the custodial parent can constitute a material change of condition. [Cits.]" *Smith v. Curtis*, 316 Ga. App. 890, 893 (730 Ga. App. 604) (2012). See also *Lodge v. Lodge*, 230 Ga. 652 (198 SE2d 861)

---

[2] Before the final hearing, Mother gave birth to two children by her new husband; he also had one child by a prior marriage.

4

(1973); *Wilt v. Wilt*, 229 Ga. 658 (193 SE2d 833) (1972). Accordingly, it was not error to find that there had been a material change in conditions warranting a change of custody.

2. The final hearing on the petition for a change in custody was held on February 22, 2012,[3] and the court stated that it would issue a final order after it read two depositions; the court did not make any oral pronouncement as to a ruling at that time. The next day, February 23, 2012, the court sent a letter to counsel for the parties stating that it had determined that the best interest of the child was that Father serve as primary physical custodian, and requesting that Father's counsel prepare an order in accordance with the court's letter.[4] On July 25, 2012, apparently before the final order the court had requested was prepared, Mother filed a "Motion for Reconsideration," in which she stated that while the court "announced its ruling from the bench [on February 22, 2012], there has been no final order entered." In her motion, Mother sought to introduce a July

---

[3] On September 12, 2011, the clerk of the trial court issued a "Notice of Final Hearing" setting February 22, 2012 as the date for the final hearing.

[4] On March 5, 2012, counsel for Mother sent the court a letter asking if the court would "be interested in seeing an updated report from Dr. Kroungold," who was the psychologist who had prepared a July 25, 2011 report on Mother's condition. In a letter dated March 9, 2012, the court replied that it had considered counsel's "request for reconsideration and the same is hereby denied."

12, 2012 report of a psychologist who had originally presented a psychological evaluation dated July 15, 2011, which had been before the court at the final hearing of February 22, 2012. On September 6, 2012, a hearing was held on Mother's motion, but no witness was sworn or evidence received; during the hearing, Mother requested that the court include findings of fact in the final order, which was not issued until September 13, 2013.

Mother contends that delaying the issuance of the final order until September 13, 2013 violated the requirement of OCGA § 19-9-3 (a) (8)[5] that a final order be issued within 30 days of the final hearing. However, OCGA § 19-9-3 (a) (8) explicitly states that the provision applies if specific findings of fact are "requested by any party on or before the close of evidence in a contested hearing," and it does not appear that such occurred here. Further, while the delay before the court's final order was entered is far from ideal, nothing in

---

[5] OCGA § 19-9-3 (a) (8) reads:

If requested by any party on or before the close of evidence in a contested hearing, the permanent court order awarding child custody shall set forth specific findings of fact as to the basis for the judge's decision in making an award of custody including any relevant factor relied upon by the judge as set forth in paragraph (3) of this subsection. Such order shall set forth in detail why the court awarded custody in the manner set forth in the order and, if joint legal custody is awarded, a manner in which final decision making on matters affecting the child's education, health, extracurricular activities, religion, and any other important matter shall be decided. Such order shall be filed within 30 days of the final hearing in the custody case, unless extended by order of the judge with the agreement of the parties.

OCGA § 19-9-3 (a) (8) suggests that, after a delay of 30 days, the trial court loses jurisdiction or must grant a motion for reconsideration such as that filed by Mother, and we will not engraft such a provision onto the statute.[6]

In response to the court's final order, on October 11, 2013, Mother filed a motion for new trial based on new evidence, and contends that the delay before the issuance of the final order should have prompted the court to grant it. Under OCGA § 5-5-23,

> [a] new trial may be granted in any case where any material evidence, not merely cumulative or impeaching in its character but relating to new and material facts, is discovered by the applicant after the rendition of a verdict against him and is brought to the notice of the court within the time allowed by law for entertaining a motion for a new trial.

And,

> [g]rants of new trial on the ground of newly discovered evidence are not favored and are addressed to the sound discretion of the trial court. The trial court's decision will not be disturbed absent a manifest abuse of discretion. To obtain a new trial based on newly discovered evidence, the evidence supporting the motion must satisfy six criteria: (1) it must have been discovered after the trial or hearing; (2) its late discovery was not due to lack of diligence; (3) it is so material that its introduction in evidence would probably

---

[6] In her brief in this Court, Mother notes that after the hearing on February 22, 2012, "[a]lthough the [trial court] sought input from counsel, no consent order extending the time for an order was ever issued . . . ."

7

produce a different result; (4) it is not merely cumulative; (5) the affidavit of the witness must be attached to the motion (or its absence accounted for); and (6) it does not operate only to impeach a witness. All six criteria must be satisfied for a new trial to be warranted.

*Hopper v. M & B Builders*, 261 Ga. App. 702, 704 (1) (b) (583 SE2d 533) (2003) (Footnotes omitted.) Mother notes that, in its final order, the trial court cited the concerns of the psychologist who prepared the July 15, 2011 report about the effect of the stress on Mother of another child in her home, and that in the updated July 12, 2012 psychological evaluation, the same psychologist stated that Mother "certainly appears to be capable of parenting three children"; she also cites her averment that Father had been on military deployment for six months beginning in December 2012[7] as new evidence warranting a new trial.

The proffered evidence does not demonstrate a manifest abuse of the trial court's discretion in denying the motion for new trial. There was no affidavit of the potential witness-psychologist attached to the motion, nor does the court's final order rely solely upon the single psychologist, and the contention that

[7] In her brief, Mother asserts that, since the final hearing, the child had spent more time with her than with Father.

8

Mother's condition had improved since the July 15, 2011 report was the subject of evidence and argument at the final hearing. Further, the fact that Father could be deployed for an extensive period was clearly contemplated in the court's final order and incorporated parenting plan, and there is no probability that evidence of its occurrence would produce a different result.

3. In its September 13, 2013 order modifying child custody, the trial court also modified child support, and Mother contends that the support award is in error. She was unemployed at the time of the final hearing and the court imputed income to her for purposes of calculating child support.[8] She contends imputing income to her was an abuse of discretion as her health issues and role as a caretaker for the other young children in her home precluded such. See OCGA § 19-6-15 (f) (4) (D) (v) & (vi).[9] However, the

---

[8] Mother had no work history and the court imputed a monthly income of $1,256.66, finding that she was capable of obtaining employment earning at least minimum wage. See *Brogdon v. Brogdon*, 290 Ga. 618, 620 (3) (723 SE2d 421) (2012). The court also applied a non-specific deviation which reduced her child support obligation to $75.00 a month.

[9] OCGA § 19-6-15 (f) (4) (D) provides:

**Willful or voluntary unemployment or underemployment**. In determining whether a parent is willfully or voluntarily unemployed or underemployed, the court or the jury shall ascertain the reasons for the parent's occupational choices and assess the reasonableness of these choices in light of the parent's responsibility to support his or her child and whether such choices benefit the child. A determination of willful or voluntary unemployment or underemployment shall not be limited to occupational choices motivated only by an intent to avoid or reduce the payment of child support

but can be based on any intentional choice or act that affects a parent's income. In determining willful or voluntary unemployment or underemployment, the court may examine whether there is a substantial likelihood that the parent could, with reasonable effort, apply his or her education, skills, or training to produce income. Specific factors for the court to consider when determining willful or voluntary unemployment or underemployment include, but are not limited to:

    (i) The parent's past and present employment;

    (ii) The parent's education and training;

    (iii) Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's responsibility to support his or her child and, to this end, whether the training or education may ultimately benefit the child in the case immediately under consideration by increasing the parent's level of support for that child in the future;

    (iv) A parent's ownership of valuable assets and resources, such as an expensive home or automobile, that appear inappropriate or unreasonable for the income claimed by the parent;

    (v) The parent's own health and ability to work outside the home; and

    (vi) The parent's role as caretaker of a child of that parent, a disabled or seriously ill child of that parent, or a disabled or seriously ill adult child of that parent, or any other disabled or seriously ill relative for whom that parent has assumed the role of caretaker, which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in the role of caretaker in the future. When considering the income potential of a parent whose work experience is limited due to the caretaker role of that parent, the court shall consider the following factors:

        (I) Whether the parent acted in the role of full-time caretaker immediately prior to separation by the married parties or prior to the divorce or annulment of the marriage or dissolution of another relationship in which the parent was a full-time caretaker;

        (II) The length of time the parent staying at home has remained out of the work force for this purpose;

10

statutory provision upon which she relies specifically states that a determination of willful unemployment "can be based on any intentional choice or act that affects a parent's income." OCGA § 19-6-15 (f) (4) (D). There was evidence that Mother and her new husband had determined that it was to the advantage of their children that Mother not work outside the home "until the kids are in school," and it was not error to impute income to Mother.

Mother also notes that under the court's final order, if Father is ordered by the Air Force to deploy for more than 30 days, she is awarded temporary

---

(III) The parent's education, training, and ability to work; and

(IV) Whether the parent is caring for a child who is four years of age or younger. If the court or the jury determines that a parent is willfully or voluntarily unemployed or underemployed, child support shall be calculated based on a determination of earning capacity, as evidenced by educational level or previous work experience. In the absence of any other reliable evidence, income may be imputed to the parent pursuant to a determination that gross income for the current year is based on a 40 hour workweek at minimum wage.

A determination of willful and voluntary unemployment or underemployment shall not be made when an individual is activated from the National Guard or other armed forces unit or enlists or is drafted for full-time service in the armed forces of the United States.

11

custody of the child during the period of deployment,[10] and that Father is then responsible for $500 a month child support, despite the fact that his presumptive amount of child support is $725 a month. While the trial court can certainly deviate from the presumptive amount of child support in a modification action, if it does so, it must "enter a written order specifying the basis for the modification . . . and shall include all of the information set forth in paragraph (2) of subsection (c) of this Code section." OCGA § 19-6-15 (k) (4).[11] And, as

---

[10] Under OCGA § 19-9-1 (b) (2):

Unless otherwise ordered by the judge, or agreed upon by the parties, a parenting plan shall include, but not be limited to:
. . .
    (G) If a military parent is a party in the case:
        (i) How to manage the child's transition into temporary physical custody to a nondeploying parent if a military parent is deployed;
        (ii) The manner in which the child will maintain continuing contact with a deployed parent;
        (iii) How a deployed parent's parenting time may be delegated to his or her extended family;
        (iv) How the parenting plan will be resumed once the deployed parent returns from deployment; and
        (v) How divisions (i) through (iv) of this subparagraph serve the best interest of the child.

[11] OCGA § 19-6-15 (k) (4) reads:

A petition for modification shall be filed under the same rules of procedure applicable to divorce proceedings. The court may allow, upon motion, the temporary modification of a child support order pending the final trial on the petition. An order granting temporary modification shall be subject to revision by the court at any time before the final trial. A jury may be demanded on a petition for modification but the jury shall only be responsible for determining a parent's gross income and any deviations. In the hearing upon a petition for modification, testimony may be given and evidence introduced relative to the change of circumstances, income and financial status of either parent, or

12

this Court has previously noted, OCGA § 19-6-15 (c) (2) (E)

> requires written findings of fact that a deviation applies and the reasons for the deviation, the amount of child support that would have been required if the deviation were not granted, how the application of the child support guidelines "would be unjust or inappropriate considering the relative ability of each parent to provide support," and how the deviation serves the best interest of the child. [Cit.]

*Strunk v. Strunk*, 294 Ga. 280, 282 (2) (754 SE2d 1) (2013). The failure of the trial court to include such findings as to this deviation from the presumptive amount of child support requires that we reverse the judgment as to this issue and remand the case to the trial court for the mandatory written findings. Id.[12]

Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.

---

in the needs of the child. After hearing both parties and the evidence, the court may modify and revise the previous judgment, in accordance with the changed circumstances, income and financial status of either parent, or in the needs of the child, if such change or changes are satisfactorily proven so as to warrant the modification and revision and such modification and revisions are in the child's best interest. The court shall enter a written order specifying the basis for the modification, if any, and shall include all of the information set forth in paragraph (2) of subsection (c) of this Code section.

[12] In her affidavit in support of her motion for new trial, Mother averred that, according to published schedules, Father's military pay should have risen since the time of the final hearing, and argues that the presumptive amount of child support is therefore incorrect. Although she contends this constitutes a basis for which a new trial should be granted, it is properly an issue for a petition for modification of child support. See OCGA § 19-6-15 (k).