In the Supreme Court of Georgia

Decided: March 16, 2015

S14A1669. NEAL v. HIBBARD.
S14A1673. NEAL v. NEAL.

HINES, Presiding Justice.

In these two cases, Joseph R. Neal, Jr. ("Neal") appeals the trial court's orders modifying child custody and child support as they pertain to his two children by two different marriages. For the reasons that follow, as to both cases, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Neal and Allyson C. Hibbard ("Hibbard") were divorced on January 28, 2000. They had one child together, a son who was fifteen at the time of the bench trial in the instant action; under the 2000 final judgment and decree of divorce, the parties had joint legal and physical custody of their son, who spent half of his time with each parent. In the divorce decree, Neal was ordered to pay child support to Hibbard in the amount of $660.00 per month, as well as certain expenses of the child.

Neal and Jennifer S. Neal ("Jennifer"), Neal's second wife, were divorced in October, 2006, remarried in 2009, and divorced again on July 22, 2010. They had one child together, a daughter who was seven at the time of the bench trial in the instant action; under the 2010 final judgment and decree of divorce, the parties had joint legal and physical custody of the child, and again, the child's time was split equally between the two parents, and Neal was ordered to pay Jennifer $1,000.00 per month in child support, as well as certain expenses of the child.

On December 16, 2011, a sexual incident occurred involving Neal, his then-wife,[1] and their eighteen-year-old babysitter. As a result of the incident, Neal was charged with rape and other crimes; the rape charge was dismissed in 2012, although Neal was sentenced for possession of marijuana and furnishing alcohol to an underage person. Neal was a personal injury attorney in Augusta; his criminal prosecution received extensive negative media coverage; his income was negatively impacted; and he was suspended from the practice of law in South Carolina and the United States District Court for the Southern District of Georgia. Neal then moved to Atlanta in an effort to restore his practice.

[1]Neal and this wife are now divorced and she is not a party to this action.

Both Hibbard and Jennifer sought modification of their divorce decrees as to child custody and support, and the cases were heard together. As to Neal's son with Hibbard, on September 10, 2013, the trial court entered its final order modifying custody, giving the parties joint legal custody of the child, with Hibbard being the primary physical custodian, and Neal's visitation taking place in Augusta. On the issue of support, on September 26, 2013, the trial court entered a temporary order under which Neal was to pay $2,000.00 per month; on November 23, 2013, the trial court awarded Hibbard $1,774.00 per month in its final judgment modifying child support. Neal appeals from these orders in case number S14A1669.

As to Neal's child with Jennifer, on September 10, 2013, the trial court entered its final order modifying custody, giving the parties joint legal custody of the child, with Jennifer being the primary physical custodian, and Neal's visitation taking place in Augusta. In a September 26, 2013, temporary child support order, Neal was directed to pay $2,000.00 per month. On November 14, 2013, the trial court awarded Jennifer $1,857.00 per month in its final judgment modifying child support, and in the same order, awarded her $5,334.00 in arrears for unpaid child support; in a subsequent order, the court awarded

3

Jennifer $15,617.34 in attorney fees and litigation expenses. Neal appeals from these orders in case number S14A1673.

*Case No. S14A1669.*

1. Neal contends that the trial court erred in modifying custody of his son.

> In determining whether or not a material change in circumstances substantially affecting the welfare of a child or children has taken place, the trial judge is vested with a discretion which will not be controlled by this court unless it is abused. . . . [T]his court will not interfere with [the trial judge's] finding when there is any evidence to support it. [Cit.]

*Horn v. Shepherd*, 292 Ga. 14, 18 (5) (732 SE2d 428) (2012).

Nonetheless, Neal asserts that his sexual behavior was the only basis for the trial court's decision, and that, as such occurred without any child being present in the home at the time, his behavior should not be considered in determining whether a material change in circumstances occurred. As this Court has previously noted,

> [t]he best interests of the child are controlling as to custody changes. OCGA § 19-9-3 (a) (2); *Parr v. Parr*, 196 Ga. 805 (27 SE2d 687) (1943). Whether particular circumstances warrant a change in custody is a fact question determined under the unique

4

situation in each individual case. *Wilson v. Wilson*, 241 Ga. 305 (245 SE2d 279) (1978). In contemplating a custodial change, the trial court must exercise its discretion to determine whether a change is in the best interests of the child. OCGA § 19-9-3. The circumstances warranting a change in custody are not confined to those of the custodial parent: any new and material change in circumstances that affects the child must also be considered. *Handley v. Handley*, 204 Ga. 57, 59 (48 SE2d 827) (1948). The law thus recognizes that because children are not immutable objects but living beings who mature and develop in unforeseeable directions, the initial award of custody may not always remain the selection that promotes the best interests of the child.

*Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003). In determining the best interests of the child, a court may consider the conduct of the parents. *Patel v. Patel*, 276 Ga. 266, 267-269 (1) (577 SE2d 587) (2003); *Mock v. Mock*, 258 Ga. 407 (369 SE2d 255) (1988). As the trial court noted, there was evidence of the notoriety produced by Neal's conduct, and the effects thereof, including Neal's move from Augusta to Atlanta. The court heard evidence regarding the logistics of visitation, and a relocation of a parent is a factor that the trial court can consider in determining the best interests of the child. See *Salmon-Davis v. Davis*, 286 Ga. 456, 457-458 (1) (689 SE2d 303) (2010). Neal fails to show error on this ground. *Horn*, supra.

2. Neal urges that any modification of child support to Hibbard is

5

unwarranted, contending that Hibbard never requested a modification of support, but such a request is in her original complaint, and a modification of support is justified, given the change in custody. See *Stoddard v. Meyer*, 291 Ga. 739 (732 SE2d 439) (2012). Further, Hibbard's absence from the second consolidated hearing on custody and child support did not waive her right to receive from Neal, for the benefit of the child, financial support that reflects the change in custody; Neal cites *Sykes v. State*, 236 Ga. App. 518 (511 SE2d 566) (1999), but it is simply inapposite. That case dealt with a criminal prosecution in which the defendant made a speedy trial demand under OCGA § 17-7-170 (a), and the trial court found that, by his actions, the defendant had waived his statutory right to a speedy trial.

3. The trial court entered a temporary order of child support on September 26, 2013, setting support for Neal's son at $2,000.00 per month. Neal notes that the trial court did not append a child support calculation worksheet to the temporary order, but none is required. Rather,

> [t]he child support worksheet and, if there are any deviations, Schedule E shall be attached to the *final* court order or judgment; provided, however, that any order entered pursuant to Code Section

6

19-13-4[2] shall not be required to have such worksheet and schedule attached thereto.

OCGA § 19-6-15 (m) (Emphasis supplied.) Nonetheless, "[t]he child support guidelines contained in [OCGA § 19-6-15] are a minimum basis for determining the amount of child support and shall apply as a rebuttable presumption in all legal proceedings involving the child support responsibility of a parent." OCGA § 19-6-15 (c) (1). However, there is no indication that the trial court used the guidelines in determining the amount of child support in its temporary order; indeed, the order shows on its face that the guidelines were not used, stating that "[a]fter careful review of the evidence, the court is unable to calculate various items relating to child support and arrears; therefore, the court will rehear all matters related to child support and arrears." The order then simply imposes a child support obligation of $2,000.00 a month. But, "[i]f modification was appropriate, then the court was required to use the child support guidelines to calculate the new amount." *Wetherington v. Wetherington*, 291 Ga. 722, 726 (2) (a) (732 SE2d 433) (2012). The fact that the temporary order was superseded by the final judgment for child support does not render it moot; the obligation

---

[2] The temporary order at issue was not entered under OCGA § 19-13-4, which provides for certain other procedures in cases of family violence.

thereunder was improperly imposed, and Neal's obligation for child support during the relevant time is still not resolved. See *Cannon v. Cannon*, 270 Ga. 640 (514 SE2d 204) (1999). Accordingly, the temporary support judgment of the trial court must be reversed and the case remanded for entry of an order that complies with the statute. See *Fladger v. Fladger*, 296 Ga. 145, 149 (2) (765 SE2d 354) (2014).

4. In its final judgment modifying child support, filed on November 13, 2013, the trial court ordered that Neal pay Hibbard $1,774.00 per month to support his son. Neal contends that in doing so, the court erred in imputing to him a gross monthly income of $18,750.00 when his financial affidavit showed only a gross monthly income of $7,032.27. As Neal recognizes, the trial court is empowered to impute income to a parent for willful or voluntary unemployment or underemployment. See OCGA § 19-6-15 (f) (4) (D). See also *Brogdon v. Brogdon*, 290 Ga. 618, 620 (3) (723 SE2d 421) (2012). Nonetheless, he argues that no evidence supported such a ruling, and that in fact, his income had diminished since his criminal prosecution; he also notes that the court did not make written findings regarding the imputation of income. However, "OCGA § 19-6-15 (f) (4) (D) does not require a trial court to make

*written findings* as to why it decided to impute income to a spouse." See *Bankston v. Lachman*, 286 Ga. 459, 461 (2) (689 SE2d 301) (2010). And, a trial court's evaluation of willful unemployment or underemployment may involve "any intentional choice or act that affects a parent's income" in order to determine "whether there is a substantial likelihood that the parent could, with reasonable effort, apply his or her education, skills, or training to produce income." OCGA § 19-6-15 (f) (4) (D). And, the trial court was empowered to consider not only Neal's income of record, but also the assets he owned. OCGA § 19-6-15 (f) (4) (D) (iv). The court noted that Neal owned four real properties, and that he had, since the time that he testified that his practice had declined, purchased a car with an attendant monthly payment of $2,036.00, and was paying $2,500.00 per month in rent, from the $7,032.27 monthly income reported on his financial affidavit. See *Banciu v. Banciu*, 282 Ga. 616, 617-618 (1) (652 SE2d 552) (2007). Further, as to Neal's reported income, the court noted that in previous court filings regarding his income in prior years, Neal had submitted financial declarations of his income that proved to understate that income by more than $10,000 a month. Neal fails to show error in the trial court's imputation of income to him for the purposes of child support

calculation.

5. Neal notes that the final order of child support in this case includes a Schedule B of the Child Support Worksheet that does not reflect the child support he is ordered to pay in the companion case concerning his support obligation for his daughter with Jennifer. He contends that the child support order regarding his daughter should have resulted in an adjustment to his gross income for the purposes of calculating child support when the trial court entered its final order modifying child support as to his son on the theory that such was a "preexisting order" to be taken into account under OCGA § 19-6-15 (f) (5) (B). While it is true that the court entered its final order modifying child support as to Neal's daughter with Jennifer (Case no. S14A1673) on November 14, 2013, before the November 21, 2013 final order modifying child support as to Neal's son, that does not meet the definition of a "preexisting order" for purposes of calculating child support under the statute. Rather,

"[p]reexisting order" means:

> (A) An order in another case that requires a parent to make child support payments for another child, which child support the parent is actually paying, as evidenced by documentation as provided in division (f)(5)(B)(iii) of this Code section; *and*

(B) That the date and time of filing with the clerk of court of the *initial order* for each such other case is earlier than the date and time of filing with the clerk of court of the *initial order in the case immediately before the court*, regardless of the age of any child in any of the cases.

OCGA § 19-6-15 (a) (18) (Emphasis supplied.) The initial child support order in the case of Neal's son was filed on January 28, 2000, the date of the initial order in the case of Neal's daughter with Jennifer is July 22, 2010, and thus, the trial court's order of November 14, 2013 modifying Neal's child support as to his daughter with Jennifer does not constitute a "preexisting order" necessitating an adjustment to Neal's gross income under OCGA § 19-6-15 (f) (5) (B).

6. In the court's final order modifying child support, Schedule B of the Child Support Worksheet includes an adjustment to Hibbard's income to reflect that a child born of another father lived in her home as a "qualified child."[3] Neal

---

[3] Under OCGA § 19-6-15 (a) (20), a

"Qualified child" or "qualified children" means any child:

(A) For whom the parent is legally responsible and in whose home the child resides;
(B) That the parent is actually supporting;
(C) Who is not subject to a preexisting order; and
(D) Who is not before the court to set, modify, or enforce support in the case immediately under consideration.

Qualified children shall not include stepchildren or other minors in the home that

11

contends that the trial court failed to make written findings of fact regarding his son's best interest in support of this adjustment. However, such is not required.

Under the child support guidelines, the "[g]ross income of each parent shall be determined in the process of setting the presumptive amount of child support and shall include all income from any source[.]" OCGA § 19-6-15 (f) (1) (A). Various adjustments may be made to the calculation of gross income, OCGA § 19-6-15 (b) (2), including an adjustment for "theoretical child support orders" under OCGA § 19-6-15 (f) (5) (C), which allows a trial court to take into account the costs of maintaining a child living in a parent's home, other than a child who is the subject of the child support order that the court is considering. OCGA § 19-6-15 (f) (5) (C). See also OCGA §§ 19-6-15 (a) (22) & 19-6-15 (b) (2) (C); *Strunk v. Strunk*, 294 Ga. 280, 282-283 (4) (754 SE2d 1) (2012). Whether to apply a theoretical child support order is in the trial court's discretion, and is based upon consideration of "the best interest of the child for whom child support is being awarded," OCGA § 19-6-15 (f) (5) (C). After this, or any other such adjustments are made, the trial court derives a presumptive

the parent has no legal obligation to support.

amount of child support. OCGA § 19-6-15 (b) (2)-(7). See also OCGA § 19-6-15 (a) (19). It is at this point that a deviation from the presumptive amount of child support, if any, is applied. OCGA § 19-6-15 (b) (8). See also OCGA § 19-6-15 (i). And, it is such deviations for which written findings are required under OCGA § 19-6-15 (c) (2) (E). See *Carr-MacArthur v. Carr*, 296 Ga. 30, 35-37 (3) (764 SE2d 840) (2014); *Strunk*, supra. But, any consideration of a theoretical child support order for a qualified child is accounted for in the presumptive child support calculation; it is not a deviation from the presumptive amount of child support. While there is a requirement that the trial court's final order include a written finding setting forth "how the best interest of the child who is subject to the child support determination is served by *deviation* from the presumptive amount of child support[,]" OCGA § 19-6-15 (c) (2) (E) (iii) (emphasis supplied), there is no such requirement in OCGA § 19-6-15 (f) (5) (C), and the fact that both subsections apply a "best interest of the child" consideration does not impose such a requirement. To the extent that *Adame v. Herndandez*, 327 Ga. App. 869, 874 (3) (b) (761 SE2d 402) (2014), holds that the trial court must support, with written findings, its exercise of discretion and consideration of "the best interest of the child for whom child support is being

13

awarded" when applying a theoretical child support order under OCGA § 19-6-15 (f) (5) (C), it is hereby overruled.

*Case No. S14A1673.*

7. Repeating the arguments advanced in Division 1, supra, Neal asserts that the change in custody as to his daughter with Jennifer was predicated solely on his sexual behavior, and that doing so was error. However, the trial court based its ruling as to the change of custody of Neal's daughter on similar considerations as those pertaining to the change in custody of his son, and as noted, was empowered to do so. See Division 1, supra. Neal notes that the trial court, at one point during the proceedings, remarked that Neal's son had been exposed to repercussions from Neal's conduct, but that the court was "[n]ot sure" that Neal's then seven-year-old daughter "really knows what happened," and Neal asserts that there was thus no showing of harm to his daughter, and no showing of a change in condition warranting a change in custody. However, in addition to the considerations discussed in Division 1, supra, we note that it is not necessary that a child already be harmed by a changing circumstance before

14

a trial court may consider it in evaluating the best interest of the child; the court's determination can include consideration of how a changing circumstance is likely to produce a change in the best interest of the child. See *Bodne v. Bodne*, 277 Ga. 445 (588 SE2d 728) (2003), which dealt with one parent's planned move to another state. See also *In the Interest of R.E.W.*, 220 Ga. App. 861, 863 (471 SE2d 6) (1996). There was also evidence that Neal attempted to manipulate his daughter against Jennifer, and Neal fails to show error on this point.

8. On September 26, 2013, the trial court entered its temporary order setting child support for Neal's daughter at $2,000.00 per month. Other than the style of the order, it is identical to that entered in Hibbard's case the same day, and thus suffers from the same infirmity. See Division 3, supra. Accordingly, this case too must be reversed and remanded for entry of an order that complies with OCGA § 19-6-15.

9. Neal's contention that the trial court erred in imputing income to him is unavailing. See Division 4, supra.

10. On November 14, 2013, the trial court entered its final judgment modifying child support in this case, with Schedule B showing as an adjustment

to his gross monthly income a preexisting child support order with a monthly support obligation of $748.75 for Neal's son. See OCGA § 19-6-15 (b) (2) (B), (f) (5) (B). Neal contends that the court should have used the figure $1,774.00 instead, as that was the obligation that the court ultimately imposed upon Neal in the companion case regarding his son. However, this is incorrect; that figure was set forth in an order on November 21, 2013. As noted, a "preexisting order" is

> (A) An order in another case that requires a parent to make child support payments for another child, which child support the parent is actually paying, as evidenced by documentation as provided in division (f) (5) (B) (iii) of this Code section; and
> (B) That the date and time of filing with the clerk of court of the initial order for each such other case is earlier than the date and time of filing with the clerk of court of the initial order in the case immediately before the court, regardless of the age of any child in any of the cases.

OCGA § 19-6-15 (a) (18). See Division 6, supra. Accordingly, the not-yet-ordered obligation of $1,774.00 per month could not be considered a preexisting order, and the trial court did not err in using the figure imposed by the original divorce decree in Case Number S14A1669.[4]

---

[4] We need not consider whether the infirm temporary order of child support filed on September 26, 2013, see Division 3, supra, should have been considered a preexisting order. Under OCGA § 19-6-15 (f) (5) (B) (iii), adjustments are permitted "only to the extent that the

10. The trial court's final judgment modifying child support found that Neal was obligated to pay Jennifer $450.00 per month in addition to his prospective child support obligation to compensate her for $5,334.00 "in arrears under the divorce decree for medical bills, extracurricular activities, and child care."[5]  Neal contends that the divorce decree required that these expenses be split equally between the parties, Jennifer contends that the divorce decree required that they all be paid by Neal, and the evidence accepted by the trial court rested on the premise that the responsibility for these expenses was entirely Neal's.  However, neither party cites to specific pages of the record on which these provisions may be found, see Rule 19, and our examination of the decree, incorporated child support addendum and associated worksheet reveals that at least some of the expenses for which the trial court found Neal liable for arrears were to be split equally between the parties.  Accordingly, on remand, the trial court must recalculate the award for arrears.  See *Blair v. Blair*, 272 Ga.

payments are actually being paid as evidenced by [specified] documentation . . . ."  Neal does not argue that the figure of $2,000.00 set forth in the temporary order should have been used, does not assert that he submitted the specified documentation showing actual payment under that directive, and no such documentation appears in the record.

[5] We note that, in connection with the modification action, Jennifer had filed a petition to find Neal in contempt for, inter alia, failure to pay required expenses.  See *Strunk*, supra at 283-285.

94, 97 (3) (527 SE2d 177) (2000).

11. The court awarded attorney fees to Jennifer for both the child custody proceedings, OCGA § 19-9-3 (g), and the child support proceedings, OCGA § 19-6-15 (k) (5). See *Viskup v. Viskup*, 291 Ga. 103, 106 (3) (727 SE2d 97) (2012). At different times during the proceedings, Jennifer was represented by two separate attorneys, first Clay Jolly and then Jenna Matson. Although Neal asserts that no fee award was warranted, reasonable attorney fees may be ordered "to be paid by the parties in proportions and at times determined by the judge" under OCGA § 19-9-3 (g), and "as the interests of justice may require" under OCGA § 19-6-15 (k) (5). The record as it stands supports the court's determination that awarding fees under the statutes is appropriate.

As to the fees due for Matson's representation, Neal urges the award includes amounts that should not have been embraced in the court's final award of attorney fees, issued after a hearing held on October 11, 2013. At a prior hearing on August 29, 2013, Matson presented evidence of the costs of her representation of Jennifer to that date. Although the need for Matson to continue to put forth efforts to represent Jennifer prior to the hearing of October

11, 2013 would appear obvious,[6] Neal contends that he did not receive notice that evidence of additional attorney fees for Matson would be presented at that hearing, only that Jolly's fees would be addressed. Neal did not raise any issue regarding notice before Matson presented her evidence as to costs of her representation since the prior hearing; in fact, it was not until Neal had completed his cross-examination of Matson about these fees that he raised the issue, at which point the court deemed any objection based on notice to have been waived. Although Neal contends that the court did not afford him an opportunity to object to the lack of notice before he completed his cross-examination, the record reveals no such impediment, and the trial court did not err in finding that Neal had waived the objection. See *Spearman v. Georgia Bldg. Auth.*, 224 Ga. App. 801, 805 (2) (42 SE2d 463) (1997); *Jackson v. State*, 217 Ga. App. 485, 488 (4) (a) (458 SE2d 153) (1995).

As to the fee award for Jolly's representation, during the hearing on October 11, 2013, Neal objected to Jolly's claim for attorney fees, and his

---

[6] On August 29, 2013, Neal filed three additional pleadings in the case, including one which moved to strike what he alleged were Matson's "false statements," requested sanctions against Matson for alleged violations of the Rules of Professional Conduct of the State Bar of Georgia, and demanded that the case be assigned to another judge.

testimony in support thereof, on the ground that Jolly had withdrawn from his representation prior to trial, and prior to filing his independent claim for attorney fees. However, Neal fails to cite any authority for the proposition that attorney fees cannot be awarded under the relevant statutes for one who has withdrawn from representation; the statutory language that fees may be ordered "to be paid by the parties in proportions and at times determined by the judge," OCGA § 19-9-3 (g), and "as the interests of justice may require," OCGA § 19-6-15 (k) (5), would seem to encompass such a situation. Neal fails to show that the statutory conditions are not met when an attorney withdraws before completion of the case, without first submitting evidence in support of the as-yet-unaddressed fee request; after all, but for the statutory provisions, Jennifer would be responsible for all of her attorney costs, *Viskup*, supra, necessarily including fees incurred before the withdrawal of her first counsel.

Judgments affirmed in part and reversed in part, and cases remanded with direction. All the Justices concur.