A95A1776. GRAHAM v. HOLMES.
(463 SE2d 513)

BEASLEY, Chief Judge.
The child who is the subject of this custody dispute was born to

---

the parties, who were married in 1982, on May 1, 1985. They separated when he was seven months old, entered into a separation agreement, and divorced soon after the boy's first birthday. Under the divorce decree, the father was awarded custody of the child, and the mother was granted the right to visit him for six hours each on Saturday and Sunday afternoons on alternate weekends.

In 1989, the mother sought to obtain custody of the child, but it was denied. At that time, she moved to Louisiana, but she made at least monthly trips to Georgia to visit him Thursday evening and all weekend. She remarried in 1990, and she and her new husband moved back to Atlanta in September 1990. In 1991, she began to visit the child on weekdays (Monday, Wednesday, and Friday from 3:00 to 6:00 p.m.), alternate weekends, and most legal holidays, and this continued for three and one-half years. She became actively involved in his life, such as by being his room mother in first, second, and third grades, being football team mother at school, accompanying him to school on the first day each year, and taking him on vacations, sometimes week-long, without her husband because he was not permitted. The mother was given custody for two or three weeks when the father remarried in June 1993.

Afterward, the mother's access to the child was restricted. The father instructed school authorities not to allow her on the premises, and his new wife became the child's room mother. In January 1994, the mother's attorney wrote a letter to the father's attorney expressing alarm because she had just been advised that her visitation with the child would be limited solely to that set forth in the parties' separation agreement, and he suggested an alternate plan to amend the agreement.

That did not materialize, so the mother petitioned the court to change custody or modify it by enlarging her visitation rights. A court-ordered psychological evaluation of the child, the parents, and their spouses resulted in a recommendation that the court order either a joint legal custody arrangement or sole custody in the mother. Another psychologist, who had conducted an evaluation of the parties in the 1989 custody proceeding and who had treated the child for anxiety at the request of the father beginning in February 1994, recommended that one person have primary custody, "most properly (sic) the father since that is who[m] he has been with for most of his life, with other weekend visits with the mother and perhaps a contact on a Wednesday or so with the mother each week." He expressly did not recommend joint custody or a change of custody.

After the hearing, the court entered an order pursuant to OCGA § 19-9-3, finding that there has been no substantial change in conditions materially affecting the welfare of the child, then age nine and one-half, so as to justify a change of custody. The father retained sole

legal and physical custody, and the mother was awarded more extensive visitation rights than had been granted in the divorce decree but less extensive than what had become the practice before the father's remarriage. The mother's application for discretionary appeal was granted. OCGA § 5-6-35 (a) (2).

The evidence shows that the father, recognizing the importance of the mother's involvement in the child's life, agreed for her to exercise substantially greater visitation rights than those set forth in the parties' divorce decree. This resulted in frequent contact between her and the child over a period of several years. Through this contact, she has demonstrated that she is as devoted to the child as is the father and is equally able to care for and nurture the child.

Despite the trial court's finding, there indisputably has been a substantial change in conditions insofar as the mother's relationship with the child is concerned, in that a stepmother has entered the child's life. However agonizing that might be, there are no undisputed facts in this case in that regard that would make it an abuse of discretion for the trial court not to change custody to the mother on that account. It could be so, in some cases, as the undermining by a custodial parent's new spouse of the existing natural relationship between the child and the non-custodial parent may constitute a change which adversely affects the child's welfare, happiness, and best interests. It is evident from the record that the trial court took this significant change into account. Of course, vigilant care must be taken by the father and stepmother to assure that the mother's relationship with her son not be subverted by the stepmother's role in the boy's life. It naturally tends to subvert the mother's role, and steps should be taken in carrying out the court's order to compensate for this.

It is also evident that the court considered the fact that greater visitation than decreed when the child was age one became the norm for a lengthy period of time, resulting in a closer bond than otherwise may have been the case. But this did not constitute so much a change of condition but rather the natural development of a healthy mother-son relationship. This, even with the introduction of a stepmother into the boy's life, did not require a change of custody to the mother.

It is true that, "where . . . the trial court determines that both parents are fit and equally capable of caring for the child, the court must consider joint custody but is not *required* to enter such an order unless it specifically finds that to do so would be in the best interest of the child." *Baldwin v. Baldwin*, 265 Ga. 465 (458 SE2d 126) (1995). (Emphasis in original.) This is an application of the state's policy that "there shall be no prima-facie right to the custody of the child or children in the father or mother." OCGA § 19-9-3 (a) (1). Here it is evident that the court considered and rejected it; the psychologist who conducted the court-ordered evaluation recommended it or sole

custody in the mother, but the psychologist who had treated the child recommended against both. Moreover, the petitioner did not seek joint custody.

We must conclude that the court did not abuse its discretion, nor fail to take into account relevant factors, in determining that custody should not be changed to the mother.

Neither do we find an abuse with respect to the amount of visitation awarded. It was increased from the original order to two weekends a month, a two-hour period each midweek, up to four weeks of summer vacation, a portion of his birthday, and certain holidays. The court was not compelled to institutionalize the visitation schedule which had been practiced for the three-plus years when the child was between ages five and eight, after the mother's return to Georgia. Even if this were found to have constituted a material change of conditions, the best interests of the child did not require the visitation she sought as an alternative to custody. Even a lengthy voluntary departure from the court-ordered plan, favorable to one parent, does not ripen automatically into a change of condition which that parent has a right to institutionalize. It all depends on the best interest of the child. See *Lightfoot v. Lightfoot*, 210 Ga. App. 400, 403 (3) (436 SE2d 700) (1993).

Appellant cites no authorities in support of her positions in these regards.

*Judgment affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 4, 1995 —
RECONSIDERATION DENIED OCTOBER 24, 1995 —

*Richardson & Chenggis, George G. Chenggis*, for appellant.
*Bivens, Hoffman & Fowler, L. Brown Bivens*, for appellee.