S13A0911, S13A0912. TAYLOR v. TAYLOR (two cases).
(748 SE2d 873)

BLACKWELL, Justice.
James and Julie Taylor were divorced in June 2010. By the terms of the original decree of divorce, they were to share joint legal custody of their two children, James was to have primary physical custody of the children, and Julie was to pay a certain amount each month to James as child support. Not even three months after the entry of the

---

original decree,[1] James filed a petition to modify it, alleging that circumstances had changed, and seeking sole legal custody of the children, as well as more child support. The trial court granted the modification, awarded sole legal custody to James, and increased the amount that Julie was to pay James as child support. The trial court also awarded attorney fees to James. In Case No. S13A0911, Julie appeals from the modification of the decree, and in Case No. S13A0912, she appeals from the award of attorney fees. We see no error, however, and affirm in both cases.

### Case No. S13A0911

1. Julie contends that the evidence presented on the petition to modify did not show that the children were harmed by joint legal custody, and for that reason, she says, the trial court erred when it modified the decree so as to award sole legal custody of the children to James. As we have explained before, however, when parents dispute the custody of a child, "[a] trial court has very broad discretion, looking always to the best interest of the child." *Autrey v. Autrey*, 288 Ga. 283, 285 (4) (702 SE2d 878) (2010). And when we review an exercise of that broad discretion, we "will not interfere unless the evidence shows a clear abuse of discretion, and where there is any evidence to support the trial court's finding, [we] will not find there was an abuse of discretion." Id. (citation omitted). See also *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013) ("A trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion." (Citation omitted)). We see no clear abuse of discretion in this case.

In the proceedings below, Julie admitted that she began to live with her boyfriend soon after the entry of the original decree — even before James sought a modification — and that she shared her home with her boyfriend even when the children were visiting with her. She admitted that she did not disclose to James that her boyfriend was living with her. She admitted that she took the children on a vacation in Florida with her boyfriend, but she told James that she and the children instead had vacationed with her sister. Julie also acknowledged that, during that Florida vacation, one of the children lied to James in a telephone conversation about who was vacationing with them, and she failed to correct the child. There also was evidence presented below that Julie made derogatory remarks about James in

---

[1] The original decree was entered on June 1, 2010, and James filed his petition 84 days later, on August 24, 2010.

the presence of the children, that one of the children repeated such remarks to a counselor, and that the child had difficulties with truth-telling, including by repeating the lie that the children had vacationed in Florida with Julie and her sister. In addition, there was evidence that Julie continued to consume alcohol in the presence of the children, even though she had promised the court that she would "try to stop" drinking, and notwithstanding that her drinking violated the terms of her probation for driving under the influence. All together, the evidence presented on the petition to modify — including the evidence mentioned above — is sufficient to sustain the award of sole legal custody of the children to James. See *Vines*, 292 Ga. at 552 (2).

2. Julie also contends that the trial court erred when it modified the original decree with respect to child support, arguing that the trial court incorrectly calculated the child care expenses borne by James, specifically the costs of a nanny for the children. First, Julie says, James did not present sufficient proof that he actually bears such expenses. James testified, however, that he pays $1,500 each month to the nanny for her services, and that is sufficient to sustain the finding of the trial court that James actually incurs such costs. See *Vereen v. Vereen*, 284 Ga. 755, 756 (1) (670 SE2d 402) (2008) ("The standard by which findings of fact are reviewed is the 'any evidence' rule, under which a finding by the trial court supported by any evidence must be upheld." (Citation and punctuation omitted)).

Second, the costs of the nanny are altogether unnecessary because James works from his home, Julie says, and considering the limits of her own income, it was error for the trial court to require her to pay child support to defray such unnecessary expenses. When a non-custodial parent seeks a deviation from the presumptive amount of child support in light of her low income, the trial court must consider the reasonableness of expenses incurred by the custodial parent. See OCGA § 19-6-15 (i) (2) (B) (iii). But the evidence in this case supports a finding that the costs of a nanny were reasonable work-related child care expenses for James, especially considering the young age of the children,[2] that the costs of a nanny were small in comparison to the monthly income earned by James, the undisputed evidence about the qualifications of the nanny and her constructive interaction with the children, and the admission by Julie that she and James first hired a nanny — or, as she put it, a "mother's helper" — to help with the children when they still were married and living in the same home.

---

[2] At the time of the hearing on the petition to modify, one of the children was six years of age, and the other was four.

See *Gresham-Green v. Mainones,* 290 Ga. 721, 722-723 (2) (725 SE2d 277) (2012) (applying abuse of discretion standard to trial court's decision to deviate from the presumptive amount of child support under OCGA § 19-6-15). We find no abuse of discretion in the decision of the trial court to count the expenses of a nanny as reasonable ones borne by James.

3. Finally, Julie argues that the trial court denied her "due process rights" when it entered a temporary modification order with the same terms as the permanent modification order. This temporary order, Julie says, was entered just before the permanent order, and it was designed to deny her the benefit of supersedeas upon her appeal from the entry of the permanent order. See OCGA § 5-6-46. But as we have explained before, temporary and permanent custody orders have different purposes, are of different natures, and are governed by different rules. A temporary custody order is intended merely to ensure "that the children are adequately cared for until . . . further order [of the court]," and a temporary order "does not decide any final issues between the parties." *Foster v. Foster,* 230 Ga. 658, 660 (198 SE2d 881) (1973) (citation and punctuation omitted). Here, after hearing the evidence concerning the changed circumstances of the children — particularly the evidence that Julie had moved her boyfriend into her home, that she was fostering a disregard by the children for truthfulness, and that she was continuing to drink alcohol — the trial court had discretion to safeguard the children from such changed circumstances pending the resolution of the modification proceedings, including any appeal from the final modification order. Consequently, this claim of error is without merit.

### Case No. S13A0912

4. Julie claims that the trial court erred when it awarded $35,000 in attorney fees to James because it failed to identify which portion of the fees was awarded pursuant to OCGA § 9-15-14, and which portion was awarded pursuant to OCGA § 19-9-3 (g).[3] But the trial court made findings sufficient to sustain the full amount of the award

---

[3] Julie claims that the trial court erred in several other respects when it awarded attorney fees, but these other claims of error find no support in the record. First, she says, James did not raise the question of attorney fees at the final hearing on his petition to modify. But the record shows that he asked the trial court at the final hearing to reserve the question, the trial court said it would do so, and in its permanent modification order, the trial court directed the parties to submit written materials on attorney fees. Second, Julie argues, James offered no proof of the reasonableness of his fees. But the record shows that Julie did not object to the trial court asking for written submissions on attorney fees, that James submitted an affidavit on the amount *and* reasonableness of his fees, and that Julie neither disputed the affidavit nor asked for a further

under *either* statute, and for that reason, it was not required to allocate the fees as Julie contends. See *Century Center at Braselton v. Town of Braselton*, 285 Ga. 380, 381 (1) (677 SE2d 106) (2009) (entirety of attorney fee properly awarded under both OCGA § 9-15-14 (a) and (b)). We find no error in the award of attorney fees.

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 23, 2013.

*Hait, Eichelzer & Kuhn, Elizabeth J. Kuhn, Melody S. Swilling, Miles W. Rich*, for appellant.

*Cauthorn, Nohr & Owen, Thomas E. Cauthorn III, O'Dell & O'Neal, Leslie A. D. O'Neal*, for appellee.

---

hearing on attorney fees. She cannot be heard now to complain about the proof of reasonableness. Third, Julie says, the trial court awarded fees that it already had included in an earlier award of attorney fees. Yet again, this claim finds no support in the record. The earlier award was based at least in part on Julie having asserted a counterclaim without substantial justification. The award now under review was based in part on Julie refusing to dismiss that counterclaim even after the court found it without substantial justification, such that James nevertheless had to prepare to meet it at the final hearing. Moreover, the record shows that the award now under review also was based on numerous other instances of misconduct — including "evasive testimony" offered by Julie at the final hearing and her refusal to consent to the correction of an obvious scrivener's error in the earlier award of attorney fees — all of which occurred after the earlier award was entered.