**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 18, 2018**

# In the Court of Appeals of Georgia

 A18A0074. SIGAFOOSE v. COBB.

BETHEL, Judge.

Herbert Rhett Cobb and Amber Elizabeth Sigafoose are the parents of a minor child. Cobb, who resides in North Carolina, filed a complaint for legitimation and child custody in Gwinnett County Superior Court against Sigafoose.[1] Sigafoose answered the complaint and also filed a counterclaim requesting that she maintain sole physical and legal custody to the child. After a hearing, the trial court entered a temporary order granting physical custody of the child to Cobb, pending a psychological evaluation of Sigafoose.[2] Following that evaluation and a second

---

[1] Cobb had previously been granted an order establishing paternity by a circuit court in the State of Florida.

[2] Sigafoose filed an application for discretionary appeal in regard to the temporary order, which this Court dismissed for lack of jurisdiction because the

hearing, the trial court issued a final order in which it granted the parties joint legal custody of the child, awarded Cobb primary physical custody, afforded Sigafoose visitation rights,[3] and ordered Sigafoose to pay attorney fees. Sigafoose claims on appeal that the custody award and the award of attorney fees were erroneous. For the reasons set forth below, we disagree and affirm.

1. Sigafoose first argues that the trial court abused its discretion in issuing its custody award. We disagree.

> Where the trial court has exercised its discretion and awarded custody of children to one fit parent over the other fit parent, this Court will not interfere with that decision unless the evidence shows the trial court clearly abused its discretion. Where there is any evidence to support the decision of the trial court, this Court cannot say there was an abuse of discretion.

*Simmons v. Wilson*, 343 Ga. App. 857, 858 (806 SE2d 267) (2017) (citation and punctuation omitted). "When reviewing a child custody decision, this [C]ourt views the evidence presented in the light most favorable to upholding the trial court's

application was not timely filed. *See* Case number A17D0179.

[3] For the first six months following the entry of the order, Sigafoose was only permitted to have supervised visitation with the child. While she claims that requiring her to visit her child under supervision was in error, in her brief she concedes that the issue is now moot and has abandoned it for purposes of this appeal.

2

order." *Mitcham v. Spry*, 300 Ga. App. 386, 386 (685 SE2d 374) (2009) (footnote omitted).

So viewed, testimony at an initial hearing held for this case showed that Cobb and Sigafoose originally met through an online dating website and began a dating relationship. At the time, they resided in neighboring towns in Florida. They went on several dates together and soon became engaged to be married. They planned to marry five months later. During their engagement, Sigafoose became pregnant. The relationship between Sigafoose and Cobb thereafter deteriorated.

During that time, Sigafoose began receiving calls from a man in Atlanta with whom she had a previous relationship that included cohabitation. She left Florida and moved in with him at his home in the Atlanta area. Sigafoose was physically and verbally abused by this man on several occasions (including in their prior relationship), and she had previously returned to live with her parents at their home in Florida on multiple occasions before returning to Atlanta to live with him again.

Sigafoose's mother and father testified at the initial hearing. Both testified that they believed Cobb would be a good father, noting the close ties he maintained with his own parents.

Sigafoose's parents also testified that they were concerned about the child's well-being if left in Sigafoose's care because of the abusive relationship Sigafoose had with the man she lived with in Atlanta. Sigafoose's mother testified that in text conversations she had with the man, he had said "inappropriate" things to her and told her to stay away from Sigafoose. The man had also threatened to harm Sigafoose's parents if they tried to visit them in Atlanta. Sigafoose had also told her parents not to contact her, and, as of the time of the initial hearing, they had not had any contact with her for over a year and a half and had never met the child. Sigafoose had also foregone contact with Cobb's parents, neither of whom had met the child as of the time of the hearing.

The record also established that Cobb maintained employment as a restaurant manager. He maintained a clean home, which included a furnished room for the child, and he made arrangements for the child to attend a local daycare. Cobb testified that he made his own schedule, which afforded him flexibility. He noted that he had taken court-recommended parenting classes in preparation for his efforts to obtain custody of the child.

Cobb also testified that he had never seen the child in person, having only seen Facebook pictures of her since her birth. Sigafoose confirmed that Cobb never met

the child prior to the initial hearing in this case. Cobb testified that Sigafoose had misled him about her whereabouts after she left Florida. Cobb was not present at the birth of the child, and he testified that Sigafoose had refused to tell him which hospital she would be admitted to for the delivery In her testimony at the initial hearing, Sigafoose indicated that she did not want the child to have a relationship with Cobb or with her own parents.

After the initial hearing, Cobb was awarded physical custody of the child on a temporary basis. Sigafoose was granted a right to regular supervised visitation, and she was ordered to submit to a psychological evaluation.

Six months later, the trial court held a final hearing in the case. Cobb testified that after he was awarded custody under the temporary order, he moved from Florida to North Carolina, which allowed him to be closer to his parents and to shorten the distance Sigafoose would have to travel for visitation with the child. He testified that the child had her own bedroom in the new residence. He also testified that he maintained his position with the restaurant company that employed him, overseeing a different region of restaurants. He testified that he still maintained a flexible work schedule despite the change in his employment situation.

Cobb presented evidence that the child had attended daycare while she was living with him in Florida and that she had been well cared for during this time. He testified that he had secured all required immunizations so that the child could attend daycare in North Carolina and that she had gone to regular medical checkups while she lived with him. He also testified that he had secured health insurance for the child and that he had scheduled a regular checkup for the child near their new residence in North Carolina.

Cobb testified that, while he was still residing in Florida, he had facilitated several opportunities for the child to visit his parents, Sigafoose's parents, and other family members who lived in the area. He planned to continue to facilitate those relationships. Cobb also testified that the child seemed to be happy living with him and that the child had developed a bond with him and his parents during the months after Cobb was temporarily awarded custody. He testified that he had facilitated and brought the child to each of the visits scheduled with Sigafoose. He also testified that Sigafoose had not made efforts to restore a relationship with her parents. Sigafoose confirmed that she had not made contact with her parents or seen them since the initial hearing in this case.

When a father seeks custody of his child following legitimation, the trial court is to apply the best interest of the child standard in making the custody determination *Braynon v. Hilbert*, 275 Ga. App. 511, 512 (621 SE2d 529) (2005). OCGA § 19-9-3 (a) (1) provides that

> [i]n all cases in which the custody of any child is at issue between the parents, there shall be no prima-facie right to the custody of the child in the father or mother. There shall be no presumption in favor of any particular form of custody, legal or physical, nor in favor of either parent. Joint custody may be considered as an alternative form of custody by the judge and the judge at any temporary or permanent hearing may grant sole custody, joint custody, joint legal custody, or joint physical custody as appropriate.

OCGA § 19-9-3 (a) (2) goes on to provide that

> [t]he judge hearing the issue of custody shall make a determination of custody of a child and such matter shall not be decided by a jury. The judge may take into consideration all the circumstances of the case . . . in determining to whom custody of the child should be awarded. The duty of the judge in all such cases shall be to exercise discretion to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly.

OCGA § 19-9-3 (a) (3) then sets forth a non-exhaustive list of factors the judge may consider in making its custody determination.

In this case, the trial court's order did not set forth any statement of facts upon which it based its conclusion that its custody award was in the child's best interests. However, because it appears that neither party requested that such findings be included in the final order, the order is not defective on that basis. OCGA § 19-9-3 (a) (8) ("If requested by any party on or before the close of evidence in a contested hearing, the permanent court order awarding child custody shall set forth specific findings of fact as to the basis for the judge's decision in making an award of custody including any relevant factor relied upon by the judge[.]") *See Morgan v. Fordham*, 328 Ga. App. 227, 229 (761 SE2d 621) (2014) (physical precedent only). In this case, the testimony established that Cobb could provide for the child's basic needs and care, he was gainfully employed in a job that allowed him flexibility to care for the child, he had taken steps to establish a home for the child, and he had made childcare arrangements for the child in the months after he temporarily received custody of her. *See* OCGA § 19-9-3 (a) (3) (E); (F). The record also established that he maintained a flexible work schedule that allowed him to care for the child and be present at home in the evening. *See* OCGA § 19-9-3 (a) (3) (K). Cobb's testimony also established

8

that during the months after he received custody of the child, the two developed a bond and that he learned to care for her day to day needs. *See* OCGA §§ 19-9-3 (a) (3) (A); (D). The evidence in this case established that the child was well cared for while in his custody. *See* OCGA § 19-9-3 (a) (3) (M).

Moreover, the testimony of Sigafoose's mother raised concerns about the home environment the child would face should she continue to reside exclusively with Sigafoose and her boyfriend in Atlanta. *See* OCGA § 19-9-3 (a) (3) (F). The evidence established the volatile and abusive nature of the relationship Sigafoose maintained with her boyfriend and the efforts they had taken to keep Sigafoose's parents away from the child. The evidence also established that Sigafoose did not have contact with her parents and did not want them to be around the child. The trial court could consider each of these factors in regard to the stability of Sigafoose's family unit as well as the absence of a support system around Sigafoose. *See* OCGA § 19-9-3 (a) (3) (H); (P). Because, prior to the initial hearing in this case, Cobb had never seen the child and because Sigafoose had taken specific actions to ensure as much, the record also established that Sigafoose had been unwilling to facilitate a relationship between Cobb and the child. *See Wilson v. Wilson*, 338 Ga. App. 891, 894 (792 SE2d 139) (2016); OCGA § 19-9-3 (a) (3) (N).

By contrast, the record reflected that, during the time the child was in his custody, Cobb had not only facilitated required visitation between Sigafoose and the child but that he had also made efforts to ensure that the child spent time with Cobb's parents, Sigafoose's parents, and members of their extended families. During that time he also moved to North Carolina, which allowed him to be closer to his family and to shorten the distance between Sigafoose and the child. The trial court could consider each of these facts in considering the availability of a support system around Cobb and his efforts to facilitate a relationship between Sigafoose and the child. *See* OCGA § 19-9-3 (a) (3) (F); (N).

Finally, although Sigafoose presented evidence in regard to both her fitness as a parent and Cobb's lack thereof, we note that the trial court expressed concerns regarding Sigafoose's credibility and called her mental health into question when it issued the orders in this case. The trial court noted on the record that the parties' custody hearing was "remarkable" because of Sigafoose's testimony. The trial court noted that Sigafoose's affect was "odd and occasionally inappropriate to the circumstances," that her testimony "lack[ed] factual foundation in many cases," that it was "uncomfortable" to listen to, and that it gave the court "serious concerns about [Sigafoose]'s present mental situation." At the final hearing, the trial court also noted

10

that it regarded the psychological evaluation undergone by Sigafoose to be "superficial and incomplete."

As this Court has noted repeatedly in its child custody jurisprudence, "we are mindful that the Solomonic task of making these decisions lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility." *Smith v. Curtis*, 316 Ga. App. 890, 892 (730 SE2d 604) (2012) (citation and punctuation omitted). Moreover, OCGA § 19-9-3 (a) (3) (I) explicitly permits the trial court to consider the "mental. . . health of each parent" in making its determination as to the custody arrangement that will advance the best interests of the child. Although some evidence presented in these proceedings supported the claims made by Sigafoose, because there was evidence in the record supporting the trial court's award of custody to Cobb under numerous of the factors set forth in OCGA § 19-9-3 (a) (3), we find that the court did not abuse its discretion in rendering that decision. *See Smith v. Pearce*, 334 Ga. App. 84, 92 (4) (778 SE2d 248) (2015) (award of custody in favor of father affirmed where evidence demonstrated father's love for and bond with child, his financial and residential stability, and his relationship with his family and demonstrated mother's residential instability and prior acts of withholding child from father).

2. Sigafoose also claims that because the trial court abused its discretion in transferring custody of the child to Cobb, Cobb was not entitled to an award of attorney fees pursuant to OCGA § 19-9-3 (g). We disagree and affirm the award of attorney fees to Cobb.

OCGA § 19-9-3 (g) provides that "the judge may order reasonable attorney's fees . . . to be paid by the parties in proportions and at times determined by the judge." The trial court has wide discretion to award attorney fees under this provision. *Gordon v. Abrahams*, 330 Ga. App. 795, 799 (3) (b) (769 SE2d 544) (2015).

Here, other than attacking the underlying award of joint legal and primary physical custody of the child to Cobb, Sigafoose does not offer this Court any basis upon which to determine that the trial court abused its discretion in ordering her to pay attorney fees under OCGA § 19-9-3 (g). The record reflects that, prior to the final hearing, Cobb agreed to pay his attorney a flat fee of $2,000 to complete the case. Cobb's request for fees was supported by the submission of his attorney's billing records for the case. Cf. Jackson v. Sanders, 333 Ga. App. 544, 561 (6) (773 SE2d 835) (2015). The $2,000 in fees agreed to by Cobb is the precise amount of fees awarded to him by the trial court. As we find the award of custody to be within the trial court's discretion, and because Sigafoose has offered this Court no basis to

12

challenge the award, we find no abuse of the trial court's discretion in making the fee award pursuant to OCGA § 19-9-3 (g).

*Judgment affirmed. Ellington, P. J., and Senior Appellate Judge Herbert E. Phipps, concur.*