**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**October 5, 2020**

# In the Court of Appeals of Georgia

A20A1185. MCMANUS v. JOHNSON.

MARKLE, Judge.

Felicia Nicole McManus appeals from two temporary orders granting Nicholas Wade Johnson's petition to modify custody and denying her subsequent motion to vacate the order.[1] On appeal, she contends that the trial court erred by failing to consider both whether there had been a material change in circumstances affecting the welfare of their child, and if the modification was in the child's best interest. Finding no error, we affirm.

"When considering the appeal of a child custody decision, we view the evidence in the light most favorable to the trial court's decision. And we review a trial

---

[1] Because custody is at issue, the temporary orders are subject to direct appeal, pursuant to OCGA § 5-6-34 (a) (11). See generally *Lacy v. Lacy*, 320 Ga. App. 739, 742 (3) (740 SE2d 695) (2013).

court's custody decision for an abuse of discretion." (Citation and punctuation omitted.) *Longino v. Longino*, 352 Ga. App. 263 (834 SE2d 355) (2019).

So viewed, the record reflects that, in 2014, Johnson and McManus had a child out of wedlock. The following year, Johnson legitimated the child, and was granted joint legal custody, with McManus maintaining primary physical custody. Pursuant to the parenting plan, Johnson had visitation rights for every other weekend and on two afternoons per week, as well as on specific holidays and school breaks.

A few years later, McManus and Johnson withdrew the child from daycare, so he could instead be cared for by Johnson's wife, who worked from home. Thereafter, the parties began to deviate from the visitation schedule in an unstructured manner, with the child spending significantly more unplanned nights at Johnson's home.[2]

In January 2019, Johnson filed a petition for modification of custody, alleging that he had been the primary custodial parent for over a year, and thus he should be awarded temporary and permanent primary physical custody, as well as child support. McManus counterclaimed to maintain primary physical custody, and asserted a claim

---

[2] The parties disputed the exact number of additional nights the child spent with Johnson. But it is undisputed that the parties cooperated in this deviation.

for contempt, alleging that Johnson had fallen into arrears on his child support payments, and that she was entitled to attorney fees under OCGA § 19-6-2 (a).

At a hearing, the trial court heard testimony from the child's guardian ad litem, who testified that both parties were good parents, and that McManus was "doing right" by having Johnson and his wife care for the child while she was in school. The guardian ad litem explained that she initially recommended a 50/50 joint custody schedule, and noted that McManus had returned to the visitation schedule in the consent agreement after Johnson filed the petition to change custody.[3] Thereafter, the trial court issued a temporary order changing the custody and visitation schedule to alternate weekly and leaving the child support obligations intact.

McManus filed a motion to vacate the temporary order and return primary custody to her. The trial court held a second hearing, at which McManus and Johnson testified that they had both agreed to deviate from the visitation schedule, and they also agreed to have Johnson's wife care for the child in order to save money. McManus explained that she had since finished her education and was working at a job with a flexible schedule. The guardian ad litem again testified, stating that all of

---

[3] As McManus later explained, this decision to return to the scheduled visitation plan was based on her attorney's advice.

the preceding visitation changes and the back-and-forth schedule the court ordered after the first hearing were creating too much chaos. The trial court also admitted, over Johnson's objection, records from the child's counselor, in which he explained that he had not observed specific behavioral problems, but generally opined that "sole physical custody by one parent with liberal visitation by the non-custodial parent is in the best interest of a young child."

The trial court issued a second temporary order, denying the motion to vacate its previous order, and finding there was a substantial change in circumstances due to the parties' agreement to modify visitation, the unstructured nature of the deviation in visitation, and the parties' behavior. The trial court further indicated that a schedule was in the best interest of the child. McManus now appeals.

In interrelated enumerations of error, McManus argues that the trial court erred in granting the temporary order to modify custody because the deviation from the visitation schedule was not a material change in circumstances; there was no evidence to support the trial court's findings that a modification was in the child's best interest; and the trial court ignored precedent in granting the temporary modification. We disagree.

Under OCGA § 19-9-3 (e), a trial court has the discretion to order a temporary change in custody while a petition for custody modification is pending. See also *Massey v. Massey*, 227 Ga. App. 906 (490 SE2d 205) (1997). Importantly,

> an award of temporary child custody differs in its nature and purpose from an award of permanent custody. The temporary award is intended to create an interim arrangement that serves the best interests of the child pending adjudication of the rights of the mother and father, whereas an award of permanent custody constitutes a final adjudication of the rights of the parties.

(Citations and punctuation omitted.) *Rose v. Rose*, 294 Ga. 719, 721 (1) (755 SE2d 737) (2014); see also *Pace v. Pace*, 287 Ga. 899, 900-901 (700 SE2d 571) (2010); OCGA § 19-9-3 (e). In other words, a temporary custody order is intended merely to ensure "that the [child is] adequately cared for until . . . further order [of the court]," and a temporary order "does not decide any final issues between the parties." (Citation and punctuation omitted.) *Foster v. Foster*, 230 Ga. 658, 660 (198 SE2d 881) (1973); *Taylor v. Taylor*, 293 Ga. 615, 618 (3) (748 SE2d 873) (2013). And, "[b]ecause of its interim nature and the need to expedite the temporary custody determination to minimize disruption to the [child] involved, the temporary order is

5

not governed by the same rules of law as the permanent custody order." (Citation and punctuation omitted.) *Pace*, 287 Ga. at 900.

To begin, we note that the trial court made a determination of changed circumstances due to the parents' decision to allow the child to spend the night at Johnson's home more frequently than the visitation schedule set out. We caution the trial court that an agreed-upon change in the visitation schedule, as opposed to a voluntary surrender of custody, does not alone constitute a change in circumstances that would trigger modification of custody. See *Graham v. Holmes*, 218 Ga. App. 796, 798 (463 SE2d 513) (1995). Compare *Smith v. Curtis*, 316 Ga. App. 890, 893 (730 SE2d 604) (2012) (changed circumstance existed where father voluntarily surrendered his custody right).

However, the issue before us on appeal is the trial court's *temporary* order. Unlike a final order modifying custody, a *temporary* order does not require a finding of changed circumstances. *Hadden v. Hadden*, 283 Ga. 424, 425 (3) (659 SE2d 353) (2008). Compare OCGA § 19-9-3 (b) with 19-9-3 (e). Here, the trial court ordered a joint custody arrangement after hearing testimony from the guardian ad litem, considering the opinion of the child's counselor, and hearing testimony that the parents' usual course had been day-to-day decisions about where the child would

6

sleep, depending on the parents' schedules and the child's wishes. We cannot say that the temporary order - providing for a fixed schedule and avoiding the daily back and forth - was unsupported by the evidence or was an abuse of discretion. See *Foster*, 230 Ga. at 660 (court has broad discretion in awarding temporary custody); see also *Wilbanks v. Wilbanks*, 238 Ga. 660, 663 (6) (234 SE2d 915) (1977) ("a trial judge has very broad discretion in determining temporary child custody and temporary alimony, and in evidentiary matters relating thereto. Thus, reversals on appeal in temporary alimony and child custody cases are the narrow exception rather than the vast norm and may even be called 'rare.'").

Moreover, the trial court here found that the day-to-day arrangement was an "unstable situation, which is not in the best interest of the child." *Rose*, 294 Ga. at 721 (1) (temporary custody award considers best interest of the child). Cf. *Adams v. State*, 218 Ga. 130, 131 (126 SE2d 624) (1962) (noting, in dicta, that the best interest of the child is the basis for temporary custody award). On this limited record, we cannot say that the trial court abused its discretion in making this finding, or that the trial court's order was an abuse of discretion. As a result, we must affirm the trial court's denial of McManus's motion to vacate the initial temporary order.

*Judgment affirmed. Reese, P. J., and Colvin, J., concur*.

7