**FIFTH DIVISION**
**MCFADDEN, P. J.**
**BROWN AND MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 13, 2024**

# In the Court of Appeals of Georgia

A23A1384. DAVIS v. TAYLOR.

MCFADDEN, Presiding Judge.

After a bench trial, the trial court entered orders granting Rafael Taylor's petition to legitimate his biological daughter, C. T., and awarding him joint legal custody and primary physical custody of the girl. On appeal, C. T.'s mother, Nikesha Davis, challenges the custody ruling, but we find that the trial court was authorized to decide the question of custody and that the evidence supported the trial court's decision.

Davis also challenges various other rulings or actions by the trial court: the pre-trial entry of an interim parenting plan; the denial of Davis's motion to compel discovery; the alleged failure to enforce a notice of production that Davis served on

Taylor; rulings related to child support; and the award of attorney fees to Taylor. Davis has not shown that she is entitled to the reversal of any of these rulings, so we affirm.

In her appellate brief, Davis also criticizes the legitimation order and asserts in a footnote that we should reverse that ruling. But she has not included that ruling in her enumeration of errors. "[A]n appealing party may not use its brief to expand its enumeration of errors by arguing the incorrectness of a trial court ruling not mentioned in the enumeration of errors[.]" *Felix v. State*, 271 Ga. 534, 539 n. 6 (523 SE2d 1) (1999). So we do not review the legitimation order for possible reversible error.

1. *Facts and procedural history*

"When reviewing an order in a child custody case, we view the evidence in the light most favorable to the trial court's decision." *Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019). In doing so, we limit our discussion of the facts to those "found by the superior court and supported by the evidence[.]" *Mathenia v. Brumbelow*, 308 Ga. 714, 715 (1) (843 SE2d 582) (2020). "We will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to

2

the trial court's credibility determinations. We review de novo, however, the legal conclusions the trial court draws from the facts." *Mashburn*, supra (citations omitted).

So viewed, the evidence shows that C. T. was born to Davis in 2009. It is undisputed that Taylor is C. T.'s biological father, but he and Davis have never been married.

Taylor has been involved in C. T.'s life since the girl's birth and the two have an ongoing relationship. Taylor came to the hospital when C. T. was born, and C. T. has regularly visited Taylor and his family. Taylor has paid Davis child support since C. T. was a baby.

In September 2021, with Davis's knowledge and permission, C. T. began living with Taylor. In November 2021, Davis told Taylor to return the girl to her, but Taylor did not do so. Instead, on December 1, 2021, Taylor filed in the Superior Court of Fulton County a petition asking the trial court to legitimate C. T. and award him custody, parenting time, and child support.

Shortly thereafter, Davis filed in the Superior Court of Gwinnett County a writ of habeas corpus and emergency motion for C. T.'s return. After a hearing (a transcript of which is not part of the record on appeal), the Gwinnett County court

issued an order on December 10, 2021 (hereinafter the "habeas order"), holding that C. T. "shall be returned, instanter, to the sole custody of her mother, [Davis]. [Taylor] shall take no action to interfere with the right of the mother to sole custody of said child until and unless a court of competent jurisdiction grants an order allowing [Taylor] custody or parenting time with the minor child." At that point, C. T. returned to Davis.

Subsequently, Davis filed in the Fulton County legitimation action an answer opposing legitimation, a counterclaim for a modification of child support from Taylor, and a motion to dismiss Taylor's petition. In support of her motion to dismiss, Davis argued that the Gwinnett court's habeas order barred Taylor's legitimation petition and she argued that the trial court should not legitimate C. T. because Davis had abandoned his opportunity interest in developing a relationship with the girl. See generally *Mathenia*, 308 Ga. at 721 (3) (b) (unwed father has an opportunity interest to develop a relationship with his children which is protected by due process of law but which can be abandoned if not timely pursued by, among other things, inaction during pregnancy and birth, delay in filing a legitimation petition, and lack of contact with the child).

The trial court denied Davis's motion to dismiss in April 2022 and, at Taylor's request, appointed a guardian ad litem to evaluate C. T.'s best interest. Later that year, the trial court held two temporary hearings. (The appellate record does not contain a transcript of either hearing.) In August 2022, after the first of those hearings, the trial court denied Davis's request for a temporary increase in the child support she received from Taylor and entered a case management order that addressed discovery deadlines, among other things. In October 2022, after the second of those hearings, the trial court partially denied a request by Davis to compel discovery from Taylor, set a bench trial for January 2023, and entered an interim order allowing Taylor parenting time with C. T. Parenting time was granted for the express purpose of facilitating the guardian ad litem's investigation into whether an award of custody or visitation to Taylor would be in the girl's best interest. The trial court denied Davis's request for a certificate of immediate review from the interim parenting-time order.

In late November 2022, Davis stopped allowing Taylor parenting time with C. T., and on December 5 she filed a motion to suspend Taylor's parenting time, alleging that Taylor had physically attacked the girl. The guardian ad litem opined that Davis's allegations about the attack were not credible and recommended that the trial court

5

continue Taylor's parenting time. Following that recommendation, the trial court entered an order denying Davis's request to suspend parenting time. Nevertheless, Taylor did not have any more parenting time with C. T. before the bench trial. The guardian ad litem testified that, notwithstanding the trial court's orders, Davis had refused to allow contacts.

In December 2022, Davis filed what she styled an "amended" motion to dismiss Taylor's legitimation petition, again asserting that the habeas order barred the action. The trial court denied that motion, stating that Davis's motion to dismiss "was previously heard and denied by order entered 4/20/22" and "cannot be amended after denial." In the weeks leading up to the bench trial, Davis filed another motion to compel discovery from Taylor, which the trial court denied.

The bench trial occurred on January 31, 2023. At its outset, Davis told the trial court that Taylor had not produced documents in response to a notice to produce, and the trial court stated that she would take Taylor's noncompliance into account when assessing the evidence at trial. Davis did not object to that course of action.

At trial, the guardian ad litem opined that legitimation was in C. T.'s best interest. She recommended that the trial court award Taylor primary physical custody due to concerns that Davis was alienating the child from Taylor.

On February 1, 2023, the day after the bench trial, the trial court entered an order legitimating C. T. And on February 7, 2023, the trial court entered a final order that, among other things, designated Taylor as C. T.'s primary physical custodian and awarded Taylor child support and attorney fees.

2. *Custodial award*

Davis argues that the trial court erred in awarding primary physical custody of C. T. to Taylor for several reasons: because the earlier habeas order barred the trial court from adjudicating the issue of custody; because Taylor did not satisfy the statutory requirements for a custody modification; and because the evidence did not support the award. We are not persuaded.

(a) *The habeas order did not bar the trial court from adjudicating custody in the legitimation proceeding*

First, we find no merit in Davis's argument that, under principles of res judicata or collateral estoppel, the trial court could not decide the issue of custody raised in

7

Taylor's legitimation petition because another court previously had adjudicated that issue in the habeas proceeding. The two courts adjudicated different issues.

The Gwinnett County court, which issued the habeas order, decided a very narrow question regarding custody: whether Davis had lost that right. A child's legal custodian may seek a writ of habeas corpus under OCGA § 9-14-2, as Davis did, to enforce his or her custody right to a child detained by another. See *Douglas v. Douglas*, 285 Ga. 548, 550 (2) (678 SE2d 904) (2009). That Code section gives the trial court discretion "as to whom the custody of the . . . child shall be given . . . ." OCGA § 9-14-2. But "[s]uch discretion should be . . . exercised in favor of the party having the prima facie legal right to custody of the child unless the evidence shows that such person has lost the right to custody through one of the ways recognized in OCGA §§ 19-7-1 and 19-7-4 or through unfitness." *Douglas*, supra at 551 (2) (citation, punctuation, and emphasis omitted). Davis had the prima facie right to custody of C. T. at the time of the habeas proceeding, see OCGA § 19-7-25, so the habeas court considered only whether Davis had lost that right, see *Douglas*, supra, not whether a different custodial arrangement would be in the girl's best interest. Indeed, the habeas

court expressly anticipated that future proceedings before a court of competent jurisdiction might result in an award of custody or parenting time to Taylor.

That court of competent jurisdiction is the trial court in the instant case. She addressed the broader question of C. T.'s best interest when she awarded custody in connection with Taylor's legitimation petition. See OCGA § 19-7-22 (g) (permitting trial court in legitimation action to award custody "based on the best interests of the child standard"). The question of C. T.'s best interest was not at issue in the habeas proceeding, so the ruling in that habeas case did not bar the trial court in this legitimation case from administering the best interest standard under OCGA § 19-7-22 (g) and making a custody determination. See *Alberti v. Alberti*, 320 Ga. App. 724, 726-728 (741 SE2d 179) (2013) (a custody ruling in a habeas action does not bar a party from seeking custody in a separate action where allowed by statute).

(b) *The statutory requirements for modification of child custody do not require a different outcome*

Asserting that the habeas order was an initial determination of custody between her and Taylor that had occurred less than two years earlier, Davis argues that Taylor was required to — but did not — satisfy the statutory requirements for a custody

modification, specifically that he show "a change in any material conditions or circumstances of a party or the child." OCGA § 19-9-3 (b). See generally *Viskup v. Viskup*, 291 Ga. 103, 105 (2) (727 SE2d 97) (2012) ("A petition to change child custody should be granted only if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award.") (citation and punctuation omitted). We are not persuaded.

When "there has been no previous adjudication of the custody issue . . . , the change in conditions analysis should not be used." *Braynon v. Hilbert*, 275 Ga. App. 511, 512 (621 SE2d 529) (2005). As discussed above, the habeas court only adjudicated the issue of whether Davis had lost her right to sole custody of C. T., not the issue of what custodial arrangement was in C. T.'s best interest. So we disagree with Davis's characterization of the habeas order as a previous adjudication of the custody issue that invoked the statutory requirements of OCGA § 19-9-3 (b). See *Kennedy v. Adams*, 218 Ga. App. 120, 121-122 (1) (460 SE2d 540) (1995) (physical precedent only) (suggesting that for the material-change-of-condition requirement to apply, the earlier custody award must have been decided on the basis of the child's best interest).

But even if the material-change-of-condition analysis applies here, we cannot imagine any situation in which the legitimation of a child would *not* constitute a change in the material conditions or circumstances of either the child or the parents. Certainly Davis makes no persuasive argument in that regard, so she has not shown trial court error.

(c) *The evidence supported the custody award*

Davis argues that the evidence did not support the award of primary physical custody to Taylor. The best-interest-of-the-child standard set out in OCGA § 19-9-3 (a) governs this determination. See OCGA § 19-7-22 (g) (trial court may order custody in a legitimation action based on the best-interest standard); *In the Interest of N. C.*, 363 Ga. App. 398, 407-408 (6) (870 SE2d 569) (2022) (applying the best-interest standard of OCGA § 19-9-3 (a) to a custodial decision made as part of a legitimation action); *Sigafoose v. Cobb*, 345 Ga. App. 783, 786 (1) (815 SE2d 136) (2018) (same).

A trial court has very broad discretion in determining a child's best interest under OCGA § 19-9-3 (a). *Taylor v. Taylor*, 293 Ga. 615, 616 (1) (748 SE2d 873) (2013). In exercising that discretion, OCGA § 19-9-3 (a) (2) requires the trial court

"to look to and determine solely what is for the best interest of the child and what will best promote the child's welfare and happiness and to make his or her award accordingly[,]" and it permits the trial court to "consider any relevant factor" in that determination, including but not limited to specific factors set forth in OCGA § 19-9-3 (a) (3) (A-Q). One such factor is "[t]he willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child[.]" OCGA § 19-9-3 (a) (3) (N). Another such factor is "[a]ny recommendation by a court appointed . . . guardian ad litem[.]" OCGA § 19-9-3 (a) (3) (O).

In her written order, the trial court found that Davis had "made a significant effort to alienate [C. T.] from [Taylor] during this litigation." The trial court cited, among other things, Davis's opposition to the legitimation despite "depend[ing] on [Taylor] to act as a parent to [C. T.]"; Davis's failure to support C. T.'s relationship with both parents; and Davis's "pattern of failing to follow the [c]ourt's orders allowing [Taylor] parenting time," noting that Taylor had "been allowed *no* parenting time with [C. T.] from November 2022 until the final hearing." (Emphasis in original.) The trial court found that "it would be contrary to the best interests of [C.

12

T.] to maintain the status quo and to allow [Davis] to further damage the relationship between [C. T.] and [Taylor]." She concluded that giving Taylor primary physical custody and Davis reasonable visitation was "the best way to ensure that [C. T.] has a relationship with both of her parents, as contemplated by OCGA § 19-9-3 (a) (3) (N)." And she expressly agreed with the guardian ad litem's recommendation that it would be in C. T.'s best interest to award primary physical custody to Taylor.

Davis argues that the trial court erred because there was evidence pertaining to other factors that Davis asserts weighed in her favor. But the trial court expressly stated that she considered all of the factors set forth in OCGA § 19-9-3 (a) (3), and it was within her discretion to weigh those factors as she saw fit. Indeed, the plain language of OCGA § 19-9-3 (a) (3) "authorizes a trial court to do what this court did — that is, to engage in a discretionary weighing of evidence as to *any* relevant factor listed in subsection (3) before reaching a final determination as to custody." *Bankston v. Warbington*, 332 Ga. App. 29, 33 (1) (771 SE2d 726) (2015) (emphasis added). See also *Lowry v. Winenger*, 340 Ga. App. 382, 387 (2) (797 SE2d 230) (2017).

Because there was evidence supporting the trial court's finding that Davis had undermined C. T.'s relationship with Taylor, including the testimony and

13

recommendation of the guardian ad litem, we cannot say that the trial court abused her very broad discretion in concluding that the award of primary physical custody to Taylor was in C. T.'s best interest. See *Sigafoose*, 345 Ga. App. at 788 (1) (evidence that the mother had taken specific actions to prevent interaction between the child and the father supported a finding that the mother had been unwilling to facilitate a relationship between the child and the father, as contemplated by OCGA § 19-9-3 (a) (3) (N)); *Lowry*, 340 Ga. App. at 386 (2) (a trial court could, in its best interest analysis, consider the mother's current behavior as a ground for finding that the mother "would likely continue disregarding the parenting plan to the child's detriment"); *Wilson v. Wilson*, 338 Ga. App. 891, 894 (792 SE2d 139) (2016) (trial court did not abuse discretion in awarding custody to a child's father where there was evidence of the mother's unwillingness or inability to facilitate the child's relationship with the father); *Bankston*, 332 Ga. App. at 33-34 (1) (same).

3. *Interim parenting-time order*

Davis enumerates as error the trial court's entry of a parenting plan "without first hearing or ruling on legitimation in light of [Davis's] defense that [Taylor] abandoned his opportunity interest to legitimate the child." This appears to refer to

14

the trial court's October 26, 2022 order on parenting time. We find no reversible error.

Until a child born outside of marriage is legitimated, the mother is entitled to sole custody of the child. OCGA § 19-7-25. For this reason, Davis argues that the trial court lacked authority to order visitation during the pendency of the legitimation proceeding. In support of her argument, Davis cites authority decided under an earlier version of our Code that did not permit a putative father to seek custody or visitation in a legitimation petition without the mother's consent. See *Petersen v. Tyson*, 253 Ga. App. 431, 433 (559 SE2d 164) (2002) (holding that a "trial court has no authority to consider any issues related to custody, including visitation, prior to a final determination of legitimation").

But our Code now provides that "[a] legitimation petition may also include claims for visitation, parenting time, or custody[,]" OCGA § 19-7-22 (g), and a trial court may "award[ ] visitation and custody under OCGA § 19-7-22 (g) concurrently with the grant of the legitimation petition." *Chalk v. Poletto*, 346 Ga. App. 491, 496 (2) (a) (816 SE2d 432) (2018). The trial court was required to consider C. T.'s best interest in ruling on the custody and visitation claims in this case, see OCGA § 19-7-22

(g), and she entered the interim order to facilitate the guardian ad litem's investigation of that issue. Davis has pointed to no authority decided under the current Code that would prohibit such an order. To the contrary, our caselaw contains examples of instances where trial courts entered interim orders in similar circumstances. See, e. g., *Sigafoose*, 345 Ga. App. at 785 (1) (the father in a legitimation action was awarded temporary physical custody of the child after an initial hearing, and the mother was ordered to submit to a psychological evaluation).

However, even if we assume that this interim order exceeded the trial court's authority, Davis has not shown she was harmed by it. See *Simmons v. Community Renewal & Redemption*, 286 Ga. 6, 9 (3) (685 SE2d 75) (2009) (to prevail on appeal, an appellant must show that the trial court's error was harmful). Her argument that errors in the parenting-time order "irrevocably tainted" the trial court's subsequent order awarding custody to Taylor appears to concern the fact that the trial court based the custody award in part on Davis's noncompliance with the interim order. But Davis was "bound to comply with [the interim order], however erroneous or irregular it may be." *De La Reza v. Osprey Capital*, 287 Ga. App. 196, 198 (1) (651 SE2d 97) (2007). An "erroneous order cannot be disregarded; it is valid and enforceable until set

aside." *Golden Key Restaurant & Lounge v. Key Mgmt. Corp.*, 137 Ga. App. 251, 253 (2) (223 SE2d 284) (1976).

And even if the trial court's entry of the interim order was a premature adjudication of the legitimation issue, as Davis contends, the trial court subsequently held a final hearing on that issue, at which Davis presented evidence and made argument in opposition to legitimation, including her position that Taylor had abandoned his opportunity interest. After considering Davis's evidence and argument, the trial court issued an order legitimating C. T., which Davis has not enumerated as error on appeal. And after issuing that legitimation order, the trial court then issued the final order awarding custody and establishing a new parenting plan, which superseded the earlier, interim parenting-time order. Under these circumstances, Davis has not shown that any error in the interim order harmed her.

5. *Denial of motion to compel discovery*

Davis challenges the trial court's refusal to compel Taylor to respond to her discovery requests. "In matters involving discovery disputes, a trial court has broad discretion in controlling discovery . . . and we will not reverse a trial court's decision on such matters unless there has been a clear abuse of discretion." *Belknap v. Belknap*,

351 Ga. App. 748, 755 (3) (833 SE2d 135) (2019) (citation and punctuation omitted). Davis has not shown a clear abuse of discretion in this case.

On October 13, 2022, Davis filed with the trial court a notice of a discovery dispute asserting Taylor's failure to respond both to mandatory discovery required by a local rule, Fulton Super. Ct. R. 4000-6.1.1, and to supplemental discovery requests that Davis had served on August 24, 2022. The trial court entered an order compelling Davis to respond to the mandatory discovery but declined to compel supplemental discovery on the ground that Davis had not timely served the requests on Taylor. After Davis raised the issue again shortly before trial, the trial court declined to compel the supplemental discovery for the additional reason that Davis had not timely asked the trial court to compel Taylor to respond.

The trial court did not err in refusing to compel discovery on the basis that Davis's motion to compel was untimely. A case management order issued by the trial court required any motions to compel discovery to be filed "in no event later than the close of the compellable discovery period. . . ." Davis disputes the trial court's position that discovery closed in this case on July 10, 2022, arguing instead that discovery closed on October 10. Even if Davis is correct on that point, she did not file

her notice asking the trial court to compel discovery until three days later, on October 13. It was within the trial court's discretion to hold Davis to the deadline for motions to compel imposed by the case management order and to decline to compel discovery because Davis's motion was untimely. See *Lee v. Smith*, 307 Ga. 815, 820-821 (2) (838 SE2d 870) (2020) (trial court in civil case has broad discretion to enter orders setting pretrial scheduling deadlines and to impose appropriate sanctions to make those orders effective).

6. *Failure to enforce a notice to produce documents at trial*

Davis argues that the trial court erred by failing to enforce the notice to produce documents that Davis served upon Taylor a few days before trial. See OCGA § 24-13-27. Davis has not preserved this claim of error for appellate review.

The record shows that, on the day of trial, the trial court characterized Taylor's stated reason for failing to comply with the notice as "unsatisfactory" and asked Davis's counsel to propose a sanction. Davis's counsel asked the trial court to strike Taylor's claim and award attorney fees. The trial court replied:

> I'm going to deny the motion to strike their claim. You can certainly argue fees. You can certainly impact the court's decision after hearing from the evidence and your being able to cross-examine opposing party

on these failings. It will impact my ruling on the substantive issues on the trial. So that's how the court will remedy it. If you, after hearing what the evidence holds, you request additional sanctions, you're not limited in what you request in closing.

Davis's counsel did not object to this remedy, instead replying, "Thank you, Your Honor."

If Davis was dissatisfied with the trial court's remedy, she "needed to articulate that to the trial court and state an objection on the record. . . . Having failed to pose a specific objection regarding . . . the court's remedy, [Davis's] allegations of error are not subject to review on appeal." *Old Stone Co. I v. Hughes*, 284 Ga. 259, 261-262 (2) (663 SE2d 687) (2008) (citations and punctuation omitted).

7. *Child support*

Davis argues that the trial court erred in denying her request to modify temporary child support during the pendency of the proceeding and in calculating a final child support award. We find no error.

(a) *Temporary support*

As to temporary child support, Davis argues that the trial court "failed to demonstrate a proper consideration" of an increase in Taylor's income, as required

20

by OCGA § 19-6-15 (b). Nothing in the record suggests that the trial court failed to conduct the proper analysis. Compare *Neal v. Hibbard*, 296 Ga. 882, 885-886 (3) (770 SE2d 600) (2015) (reversing an award of temporary support where the order, on its face, showed the trial court did not follow the applicable guidelines). And because the appellate record does not include a transcript of the hearing that the trial court held on this issue, we do not know what evidence, if any, was presented at that hearing regarding Taylor's income. Consequently, as to the denial of temporary support, Davis has failed to affirmatively show error by the record. See *Parks v. Texas Commerce Bank*, 229 Ga. App. 467, 467-468 (494 SE2d 276) (1997).

(b) *Final child support award*

Davis argues that the trial court erred in her calculation of final child support by imputing to Taylor the amount of income he was earning before a work-related injury left him temporarily unemployed in August 2022, rather than considering evidence of Taylor's supposed income at the time of the final hearing. But in her written order, the trial court expressly found that "the proffered evidence of whether and what income [Taylor was] currently earning and in what amount" was "unreliable," and this finding fell within the trial court's discretion as the factfinder.

21

See generally *Mathenia*, 308 Ga. at 715-716 (1) (a trial court, acting as the factfinder, is entitled to discredit evidence or afford it no significant weight). If there is not reliable evidence of a parent's current gross income, a trial court may impute that amount in order to calculate support. OCGA § 19-6-15 (f) (4) (A). The trial court explained that she used Taylor's prior income in the support calculation because Taylor "expect[ed] to be able to regain the same or similar employment in the near future." See OCGA § 19-6-15 (f) (4) (A) ("When imputing income, the court … shall take into account the specific circumstances of the parent to the extent known[.]"). We find no error in this ruling.

8. *Attorney fee award*

Davis argues that the trial court erred in awarding Taylor $25,000 in attorney fees under OCGA § 19-9-3 (g), which permits attorney fees in child custody proceedings (including legitimation proceedings that address custody, see *Chalk*, 346 Ga. App. at 496 (2) (a)), and OCGA § 19-6-15 (k) (5), which permits such fees in child support proceedings. "[R]easonable attorney fees may be ordered 'to be paid by the parties in proportions and at times determined by the judge' under OCGA § 19-9-3 (g), and 'as the interests of justice may require' under OCGA § 19-6-15 (k) (5)." *Neal*,

296 Ga. at 891 (12). "The trial court has wide discretion to award attorney fees under these statutes." *Cockerham v. Cockerham*, 359 Ga. App. 891, 897 (3) (860 SE2d 163) (2021) (citation and punctuation omitted).

Davis asserts several arguments in support of her claim that the trial court abused her discretion in the attorney fees award. None have merit.

(a) *Basis for award*

First, Davis asserts that the trial court awarded attorney fees to Taylor because Davis opposed the legitimation petition, which she argues was an improper basis for the award. But in the written order, the trial court did not cite Davis's opposition to the petition as a reason for the attorney fee award. Instead, the trial court found in that order that Taylor was entitled to fees because he "was the prevailing party in a legitimation, custody and child support litigation, and properly presented argument for fees and expenses of litigation awardable under OCGA § 19-9-3 (g) and OCGA § 19-6-15 (k) (5)." The trial court also found the amount of fees awarded was "reasonable and necessary in the prosecution of this action" and was "in the interest of justice[.]" These findings comport with the language of OCGA § 19-9-3 (g) and OCGA § 19-6-15 (k) (5).

It is true, as Davis asserts, that at the final hearing the trial court described Davis's opposition to legitimation as "absurd." But "an oral pronouncement by a trial court during a hearing is not a judgment until it is reduced to writing and entered as a judgment. . . . It may provide insight on the intent of a later written judgment, but any discrepancy between the written judgment and oral pronouncement is resolved in favor of the written judgment." *Williams v. Williams*, 295 Ga. 113, 114 (1) (757 SE2d 859) (2014) (citations omitted). The trial court was not required to, and did not, make a finding about Davis's conduct in her order awarding attorney fees under either OCGA § 19-9-3 (g) and OCGA § 19-6-15 (k) (5). So we find no error.

(b) *Interests of justice*

Next, Davis argues that the trial court erred in finding that the interests of justice required the award under OCGA § 19-6-15 (k) (5). In support of this argument she alleges that Taylor engaged in bad behavior and she cites her own limited financial means. It was for the trial court, not this court, to determine how to weigh any evidence regarding these matters, and Davis has not shown that the trial court abused her broad discretion in making the award under OCGA § 19-6-15 (k) (5).

(c) *Factual basis of award*

Davis also argues that the trial court failed to "sufficiently provid[e] a factual basis to support the amount of the award." As described above, the trial court's order contained general findings that comported with the statutory language of OCGA § 19-9-3 (g) and OCGA § 19-6-15 (k) (5). Although Davis contends these findings were insufficiently specific, none of the cases she cites in support of her argument involve an award of attorney fees under either of those statutes. See *Ross v. Small*, 355 Ga. App. 483 (844 SE2d 535) (2020) (fees awarded without citing the applicable Code section); *Brooks v. Hayden*, 355 Ga. App. 171 (843 SE2d 594) (2020) (fees awarded under OCGA § 16-5-94 (d) (3)); *Rogers v. Baliles*, 333 Ga. App. 725 (776 SE2d 659) (2015) (fees awarded under OCGA § 19-6-2); *Leon v. Monterrey Mexican Restaurant of Wise*, 305 Ga. App. 222 (699 SE2d 423) (2010) (fees awarded under OCGA § 13-6-11); *Gilchrist v. Gilchrist*, 287 Ga. App. 133 (650 SE2d 795) (2007) (fees awarded under OCGA § 9-15-14). To the contrary, in a case involving a fee award under the Code sections at issue here, we stated that we knew of no authority mandating more specific factual findings. *Cockerham*, 359 Ga. App. at 898 (3).

It is true that "[i]n the exercise of [her] discretion, the trial court may only award damages under the statutes if there is sufficient proof of the actual costs and the

reasonableness of those costs." *Cockerham*, 359 Ga. App. at 897-898 (3) (citation and punctuation omitted). Moreover, Davis correctly asserts that an attorney fees award "cannot be based on guesswork or speculation." *Leon*, 305 Ga. App. at 228 (3).

But the trial court in this case had a basis for the award: evidence, in the form of a statement in place by Taylor's counsel and a supporting affidavit, that Taylor had incurred more than $45,000 in attorney fees in the course of the legitimation proceeding, which had been billed at reasonable and appropriate rates. See *Gordon v. Abrahams*, 330 Ga. App. 795, 799-800 (3) (b) (769 SE2d 544) (2015) (testimony of attorney regarding his hourly rate, amount of work done, and reasonability of fee, along with submission of billing records, was sufficient to support an award under OCGA §§ 19-9-3 (g) and 19-6-15 (k) (5)). This is not a case in which there must be additional evidence breaking out recoverable and non-recoverable fees. Compare, e. g., *Hall v. Hall*, 335 Ga. App. 208, 213 (2) (780 SE2d 787) (2015) (concerning fee award for bad conduct under OCGA § 9-15-14). Because the fees were incurred in a legitimation proceeding involving claims of custody and support, they are recoverable. See *Chalk*, 346 Ga. App. at 496 (2) (a).

(d) *Allocation of award*

Finally, Davis argues that the trial court erred by failing to allocate the attorney fees award between OCGA § 19-9-3 (g) and OCGA § 19-6-15 (k) (5). Because the trial court was authorized under either statute to make the award in its full amount, the trial court was not required to allocate the fees. See *Taylor*, 293 Ga. at 618-619 (4). So we find no error.

*Judgment affirmed. Brown and Markle, JJ., concur.*